42 A.3d 988

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Adam ROSEN, Appellant.**

Supreme Court of Pennsylvania.

Argued May 10, 2011.

Decided April 25, 2012.

demonstrate prejudice); *Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564, 574–75 (2005).

306

Jules Epstein, Kairys, Rudovsky, Messing & Feinberg, Philadelphia, for Adam Rosen.

Robert Martin Falin, Risa Vetri Ferman, Norristown, Adrienne D. Jappe, Montgomery County District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN JJ.

## *OPINION*

ORIE MELVIN, Justice.

We granted allowance of appeal to consider whether the Commonwealth can use evidence obtained pursuant to a limit-

ed Fifth Amendment waiver, occasioned by a mental health defense in a defendant's first trial as rebuttal in a subsequent trial where no mental health defense is presented. The issue arose after the Superior Court upheld the judgment of sentence of life imprisonment imposed for Appellant's first-degree murder conviction following retrial. Upon review, we affirm the order of the Superior Court.

In the early morning hours of June 30, 2001, Appellant, Adam Rosen, stabbed his wife, Hollie Rosen, to death in their home. When police arrived at the scene, Appellant initially claimed that two intruders in ski masks and parkas committed the crime. He later provided multiple, differing explanations for the murder and ultimately admitted killing his wife. Appellant claimed he and Hollie were arguing, and each had a knife; when Hollie swung her knife at Appellant, he stabbed her in the chest, and she then plunged the knife into her own neck. N.T., 4/30/02, at 59–66.

Appellant proceeded to a jury trial on April 29, 2002. In support of his defense of diminished capacity,[1] Appellant offered expert testimony from Dr. Paul Fink, a psychiatrist who examined Appellant and reviewed the notes of Appellant's prior treating physicians. Dr. Fink testified that Appellant was suffering from manic-depressive illness accompanied by psychotic features and paranoia; he opined that Appellant was "psychotic" and incapable of forming an intent to kill at the time of the stabbing. N.T., 5/1/02, at 91. The Commonwealth presented opposing expert testimony by Dr. Timothy Michals, who examined Appellant and reviewed Dr. Fink's report. Dr. Michals testified to a reasonable degree of psychiatric certainty that Appellant "had no mental disorder that would impair his capacity to form the intent to" kill his wife. *Id.* at 137. The Commonwealth's evidence included the couple's history of marital discord, Appellant's fear that his wife planned to divorce him, evidence of Appellant's delay in calling police for

1. A defense of diminished capacity negates the element of specific intent and, thus, mitigates first-degree murder to third-degree murder. *Commonwealth v. Williams,* 602 Pa. 360, 980 A.2d 510, 527 (2009); *Commonwealth v. Saranchak,* 581 Pa. 490, 866 A.2d 292, 299 (2005).

at least one hour after his wife's death, and his initial fabrication regarding how the murder occurred. Appellant was convicted by a jury of first-degree murder on May 2, 2002, and the trial court sentenced him to life imprisonment on July 22, 2002.

The Superior Court affirmed the judgment of sentence on direct appeal, *Commonwealth v. Rosen*, 830 A.2d 1052 (Pa.Super.2003) (unpublished memorandum), and this Court denied review. *Commonwealth v. Rosen*, 574 Pa. 765, 832 A.2d 436 (2003). Appellant subsequently filed a PCRA petition raising multiple claims of ineffective assistance of counsel. Following an evidentiary hearing, the PCRA court denied the petition on March 1, 2005. On appeal, the Superior Court reversed and remanded for a new trial. It determined that trial counsel was ineffective for failing to call character witnesses on Appellant's behalf, as their testimony allegedly tended to establish both that Appellant's mental instability prompted his actions and that he neither planned nor intended to kill his wife. *Commonwealth v. Rosen*, 890 A.2d 1105 (Pa.Super.2005) (unpublished memorandum). This Court denied further review, *Commonwealth v. Rosen*, 588 Pa. 780, 906 A.2d 542 (2006), clearing the way for Appellant's retrial.

Upon retrial, Appellant filed motions *in limine* on October 17, 2007, and November 2, 2007. The later motion alleged that despite his waiver of the psychotherapist-patient privilege, admission of the expert psychiatric testimony from Appellant's first trial should be precluded at his retrial. N.T., 12/27/07, at 9. The Commonwealth filed a motion *in limine* on December 10, 2007, that is docketed but omitted from the record certified to us on appeal, and a supplemental motion *in limine* on December 26, 2007.[2] The trial court held a hearing on December 27, 2007, granted the parties' motions in part,

2. Presumably, the December 10, 2007 filing is the motion referred to by the trial court in its reference to the Commonwealth's "competing motion seeking to introduce those statements [to the psychiatrists] both in its case in chief and also to impeach Rosen if he gave inconsistent testimony at trial," trial court opinion at 3, because the December 26, 2007 supplemental motion *in limine* dealt with the testimony of other witnesses.

and ruled that since Appellant was not presenting a mental infirmity defense on retrial, the Commonwealth could not present the expert psychiatric testimony as substantive evidence in its case-in-chief. The trial court concluded, however, that if Appellant testified on his own behalf, then the Commonwealth could utilize Appellant's admissions of guilt contained within the expert psychiatric testimony as impeachment evidence.[3] Trial Court Opinion, 5/15/09, at 3. Thereafter, Appellant waived his right to a jury trial and proceeded with a bench trial. "Faced with the trial court's *in limine* ruling, [A]ppellant did not testify." Appellant's brief at 8. The trial court adjudged Appellant guilty of first degree murder and sentenced him to life imprisonment.

In concluding that the statements Appellant made to the psychiatric experts were not excludable under the Fifth Amendment to the United States Constitution at his retrial, the trial court relied on this Court's decision in *Commonwealth v. Santiago*, 541 Pa. 188, 662 A.2d 610 (1995). In that case, the defendant argued that the trial court erred in admitting psychiatric expert testimony from his first trial, in which he presented an insanity defense, because no such defense was proffered on retrial. The expert, a forensic psychiatrist who had been appointed to assist in the preparation of Santiago's insanity defense in his first trial, had testified on Santiago's behalf.

*Santiago* focused on the applicability of the psychiatrist-patient privilege and whether the Commonwealth's discovery of psychiatric examination results pursuant to Pa.R.Crim.P. 305(C)(2)(a)(i)[4] entitled it to use those results at retrial when

3. The trial court represented in its Pa.R.A.P. 1925(a) opinion that its "ruling was made orally rather than by a written order, and regrettably it appears that the official court stenographer did not transcribe it." Trial Court Opinion, 5/15/09, at 3 n. 1.

4. Former Pa.R.Crim.P. 305(C)(2)(a)(i), which has been renumbered as Pa.R.Crim.P. 573(C)(1)(a), provided:

> (2) Discretionary with the court:
> (a) In all court cases, if the Commonwealth files a motion for pretrial discovery, upon a showing of materiality to the preparation of the Commonwealth's case and that the request is reasonable, the court may order the defendant, subject to the defendant's rights

the defendant presented an insanity defense at his original trial but did not do so at retrial. We made clear:

> Appellant [Santiago] did pursue an insanity defense and had [his psychiatric expert] testify on his behalf at his first trial. Moreover, although the Commonwealth obtained the evidence of Appellant's admission to [his psychiatric expert] pursuant to [Pa.R.Crim.P.] 305C(2)(a) at the first trial, at the second trial the Commonwealth possessed the evidence **as a result of its voluntary disclosure by Appellant at his first trial.**

*Santiago*, 662 A.2d at 614 (emphasis in original). We stated that the Commonwealth could not have presented such evidence under Rule 305 if the defendant had foregone an insanity defense at his original trial. The defendant's waiver of the psychiatrist-patient privilege at the first trial, however, waived the privilege at the retrial. Thus, the Commonwealth could present the examination results even though insanity was not raised at the retrial. *Id.* at 614–15.

We were guided in *Santiago* by our decision in *Commonwealth v. Boyle*, 498 Pa. 486, 447 A.2d 250 (1982), which held that when a defendant waives his Fifth Amendment right and testifies at his first trial, such testimony may be introduced at retrial even if he does not testify. *Id.* at 256. Boyle appealed to this Court following his conviction of three counts of first-degree murder for the killings of Joseph, Margaret, and Charlotte Yablonski. We reversed and granted Boyle a new trial. After conviction on retrial, Boyle argued that the trial court erred in admitting portions of his testimony from the first trial because he did not testify at his retrial. We determined that admission of the prior testimony from the first trial as substantive evidence at his retrial did not violate Boyle's Fifth Amendment rights. We explained:

> The fact that Boyle exercised his right of silence during the second trial did not insulate him from the consequences

against compulsory self-incrimination, to allow the attorney for the Commonwealth to inspect and copy or photograph any of the following requested items:
(i) results or reports of physical or mental examinations....

of his earlier testimony.... [T]estimony from an earlier trial may be introduced in the prosecution's case against a defendant regardless of whether that defendant takes the stand or not in the second proceeding.

*Boyle*, 447 A.2d at 256. Although a defendant "cannot be compelled to give evidence against himself, ... if he gives it voluntarily he cannot object to having it used against him. His constitutional privilege, as far as that testimony is concerned, is waived, and cannot be reclaimed in any subsequent trial of the same indictment." *Id.* (quoting *Commonwealth v. House*, 6 Pa.Super. 92, 104 (1897)).

Applying this principle in *Santiago*, we determined, "Like the defendant in *Boyle* who waived his privilege against self-incrimination by testifying in his first trial, [Santiago] voluntarily waived the psychiatrist-patient privilege when he decided to pursue an insanity defense in his first trial." *Santiago*, 662 A.2d at 615. We concluded that since Santiago voluntarily waived the psychiatrist-patient privilege by pursuing an insanity defense in his first trial, he could not "reclaim" the privilege in a subsequent trial.

In the instant case, the trial court reasoned that although *Santiago* dealt with the statutory psychiatric-patient privilege rather than the Fifth Amendment right against compulsory testimony against oneself, the case nonetheless was instructive. Accordingly, the trial court concluded, "Following the principle in *Santiago*, [Appellant Rosen's] psychiatrists testified at the first trial about admissions he made to them, and therefore[, the admissions] were just as admissible at the second trial as testimony [Appellant] himself might have given." Trial Court Opinion, 5/15/09, at 13. Appellant then filed a direct appeal, and the Superior Court affirmed the judgment of sentence. *Commonwealth v. Rosen*, 988 A.2d 146 (Pa.Super.2009).

On appeal, the Superior Court, like the trial court, determined that resolution of the issue was controlled by this Court's decision in *Santiago*. Noting that in *Santiago*, we permitted psychiatric testimony from the defendant's first

trial to be admitted as substantive evidence of guilt at his second trial even though he did not present an insanity defense at his retrial, the Superior Court opined, "One, like Appellant [Rosen], who presents an insanity defense at trial[,] effectively waives [his] right against self-incrimination ... as to the expert psychiatric testimony supporting that defense and the evidence presented by the Commonwealth to support its case-in-rebuttal." *Rosen,* 988 A.2d at 149. The Superior Court continued, "This principle is consonant with the general rule that a waiver of a constitutional right or privilege is permanent, and the right or privilege cannot be reasserted by the defendant to object to the use that is made of the formerly privileged communications." *Id.* (citing *Commonwealth v. Chmiel,* 558 Pa. 478, 738 A.2d 406, 422 (1999)). Thus, the Superior Court concluded that "Appellant's waiver cannot be undone at a second trial, despite the fact that he did not present an insanity defense at the second trial." *Rosen,* 988 A.2d at 149 (citing *Santiago,* 662 A.2d at 614, and *Chmiel,* 738 A.2d at 422).

The Superior Court also distinguished our decision in *Commonwealth v. Sartin,* 561 Pa. 522, 751 A.2d 1140 (2000), which it characterized as holding "that a defendant who explores mitigating psychiatric evidence in anticipation of the penalty phase of a capital murder trial must submit to examination by the Commonwealth's psychiatric expert in order" to give the Commonwealth an opportunity to rebut the mitigating evidence presented by the defendant; however, the Commonwealth may use such evidence "only as rebuttal evidence at the penalty phase of trial...." *Rosen,* 988 A.2d at 150.

Instantly, the Superior Court reasoned that unlike in *Sartin,* Appellant Rosen chose to present psychiatric evidence in his first trial to support a mental infirmity defense, "*i.e.,* to cast doubt upon his **guilt**." *Rosen,* 988 A.2d at 150 (emphasis in original). The Superior Court distinguished *Sartin,* finding it applied only to the Commonwealth's ability to counter psychiatric evidence obtained for mitigation purposes at the penalty phase of a capital trial. Moreover, the Superior Court asserted that *Sartin* actually enforced the holding in *Santiago*

since the Commonwealth cannot present evidence obtained from a compulsory psychiatric evaluation at the penalty phase unless the defendant, himself, first placed the matter in issue. It articulated that presently, "[T]he trial court adhered to the spirit of *Sartin* by conditioning the Commonwealth's ability to introduce the psychiatric evidence presented by Appellant in his first trial to rebuttal evidence only in his second trial." *Rosen*, 988 A.2d at 150.

As noted *supra*, this Court granted Appellant's petition for allowance of appeal. *Commonwealth v. Rosen*, 606 Pa. 519, 2 A.3d 472 (2010). We defined the issue before us as follows:

Whether the limited Fifth Amendment waiver occasioned by a mental health defense in a defendant's first trial allows the Commonwealth to use the evidence obtained pursuant to such waiver as rebuttal in a subsequent trial where no mental health defense is presented.

Order, 8/11/10, at 1; Appellant's brief at 5.

▇▇▇▇ When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard. *Commonwealth v. Rivera*, 603 Pa. 340, 983 A.2d 1211 (2009). "[A] motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to a ruling on a motion to suppress evidence, [therefore] our standard of review ... is the same as that of a motion to suppress." *Commonwealth v. Mitchell*, 588 Pa. 19, 902 A.2d 430, 455 (2006). The admission of evidence is committed to the sound discretion of the trial court, and our review is for an abuse of discretion. *Commonwealth v. Baumhammers*, 599 Pa. 1, 960 A.2d 59 (2008).

In arguing error by the lower courts, Appellant contends that the Fifth Amendment and interpretive Pennsylvania decisional law "treat the compelled disclosure of evidence resulting from a psychiatric defense to be a limited one, and evidence obtained from such a waiver may be used **only** to rebut a mental health defense." Appellant's brief at 14 (emphasis in original). In support of his argument, Appellant relies on *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97

L.Ed.2d 336 (1987); *Sartin, supra; Gibbs v. Frank,* 387 F.3d 268 (3d Cir.2004); and *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). He avers that *Buchanan* and *Sartin* confirm that when a defendant is required to submit to a psychiatric examination, his Fifth Amendment right against compelled testimony is waived only to the extent that he introduces evidence relating to his mental health at trial. Thus, Appellant contends, the Commonwealth should have been precluded from presenting the expert psychiatric testimony from the first trial to impeach him at his retrial because he never offered any evidence relating to his mental capacity. To that end, he argues that this case is identical to and controlled by the decision of the Third Circuit Court of Appeals in *Gibbs, supra,* which Appellant suggests held that "such evidence, even if admitted properly at a first trial, is inadmissible at [a retrial] where no mental health defense is raised." Appellant's brief at 13. He asserts that his position is consistent with *Portash,* inasmuch as that case forbade the use of compelled testimony, even for purposes of impeachment.

Appellant also asserts that *Santiago* is inapposite because it dealt solely with the issue of psychiatrist-patient privilege, not the Fifth Amendment. Accordingly, he submits that the lower courts' reliance on *Santiago* was misplaced. Finally, Appellant concludes that since the evidence of the specific intent to kill was not overwhelming, and there was substantial evidence that Appellant did not intend to kill his wife, he could have established reasonable doubt as to the specific intent to kill if he could have testified without the Commonwealth's use of the psychiatric testimony from the first trial as rebuttal. Thus, he avers that any error was not harmless, and he asks this Court to reverse the order of the Superior Court and award him a new trial.

The Commonwealth counters that the lower courts were correct in their determination that *Santiago* controlled this case. The Commonwealth reiterates the trial court's position, pointing out that the *Santiago* Court relied on *Boyle* in holding that psychiatric testimony was admissible at the de-

fendant's retrial. It makes the point that because *Boyle* was based on the Fifth Amendment, the *Santiago* Court, contrary to Appellant's contention, **did** consider the defendant's Fifth Amendment claim. Thus, the Commonwealth maintains that since the *Santiago* Court rejected the defendant's claim, we should do so here.

The Commonwealth also represents that *Sartin* did not overrule or limit *Santiago*. To the contrary, it contends, "*Sartin* applies only to the Commonwealth's ability to counter psychiatric evidence obtained for mitigation purposes at the **penalty** phase of a capital trial." Commonwealth's brief at 16 (quoting *Rosen*, 988 A.2d at 150 (emphasis in original)). Since the case *sub judice* involves psychiatric evidence presented by Appellant at his first trial to "cast doubt on his **guilt**," the Commonwealth avers that *Sartin* is inapplicable. Commonwealth's brief at 16 (quoting *Rosen*, 988 A.2d at 150 (emphasis in original)). Alternatively, the Commonwealth posits that even if *Sartin* was applicable to this case, it is relevant only to the testimony of Dr. Michals, the Commonwealth's expert, not that of Appellant's expert, Dr. Fink. It submits, therefore, that any error below was harmless, and, furthermore, other evidence supported a finding that Appellant acted with specific intent to kill.

In averring that Appellant's Fifth Amendment rights were not violated, the Commonwealth maintains that while Appellant was compelled to participate in the mental health evaluation by Dr. Michals, this fact does not excuse Appellant's failure to invoke his privilege against self-incrimination. In support of this proposition, the Commonwealth relies on *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), and articulates that such compulsion "is indistinguishable from that felt by any witness who is required to appear and give testimony, and ... it is insufficient to excuse [Appellant's] failure to exercise the privilege in a timely manner." Commonwealth's brief at 18–19 (quoting *Murphy*, 465 U.S. at 437, 104 S.Ct. 1136). The Commonwealth concludes that because Appellant waived his Fifth Amendment right, he could not seek to reassert it.

■   When *Santiago* and *Boyle* are read together, they sanction admission of the psychiatrists' testimony at Appellant's retrial. In *Boyle*, we acknowledged that although a criminal defendant "cannot be compelled to give evidence against himself, ... if he gives it voluntarily[,] he cannot object to having it used against him [because] **[h]is constitutional privilege, as far as that testimony is concerned, is waived, and cannot be reclaimed in any subsequent trial of the same indictment.**" *Boyle,* 447 A.2d at 256 (quoting *House, supra* ) (emphasis added). Correspondingly, the *Santiago* Court, relying on *Boyle,* held that the psychiatrist-patient privilege is "not designed to protect that which is voluntarily disclosed;" where a criminal defendant voluntarily waives that privilege in a first trial, he cannot "use a new trial to reclaim the privilege." *Santiago,* 662 A.2d at 615. Thus, while these cases involve the admission, at retrial, of the defendant's testimony (*Boyle* ) and the testimony of the defendant's expert (*Santiago* ), the common element here is that the testimony in question was proffered at the original trial **by the defendant,** not the prosecution. Accordingly, when read *in pari materia, Boyle* and *Santiago* support that "absent other considerations, a right or privilege once waived is always waived and that the defendant who waives a right or privilege cannot thereafter object to the use that is made of the formerly privileged communications." *Chmiel,* 738 A.2d at 422.[5]

Appellant **voluntarily** spoke to his expert, he **voluntarily** placed Dr. Fink on the witness stand, and he **voluntarily** elicited testimony from Dr. Fink during the first trial.[6] *Boyle*

---

**5.** The *Chmiel* Court considered *Santiago* in the context of a Fifth Amendment claim. In doing so, we opined that although *Santiago* "involv[ed] a different privilege," it was "[o]f similar import" for purposes of addressing the claim. *Chmiel,* 738 A.2d at 422.

**6.** Contrary to the Dissent's representation that our focus on the admissibility of Dr. Fink's testimony is "misdirected," *see* (Saylor, J., dissenting, *op.* at 323, 42 A.3d at 998–99), Appellant indeed sought to exclude testimony from **both** defense and Commonwealth psychiatric witnesses. *See e.g.,* Appellant's Reply Brief at 1 ("Prior to [Appellant's] second trial, his counsel withdrew the psychiatric defense, and moved to bar the use of disclosures to either psychiatrist [Dr. Fink and Dr. Michals]

and *Santiago* clearly cast the psychiatric testimony as "fair game" for the next trial. *See Chmiel,* 738 A.2d at 422. In fact, *Boyle* and *Santiago* support that such testimony could have been used as substantive evidence. Therefore, by limiting the Commonwealth's ability to use the testimony only for impeachment, the trial court actually permitted Appellant to shield evidence that could have been admitted regardless of Appellant's decision to testify at the retrial.

As for *Sartin*'s application in the context of the testimony of Appellant's expert, the case is inapposite. In *Sartin,* the trial court **ordered** the defendant to submit to an independent pretrial psychiatric examination in response to a Commonwealth request. Herein, however, the testimony elicited from Appellant's expert, Dr. Fink, was completely voluntary; there was no court order compelling it. Appellant voluntarily spoke to the psychiatrist and voluntarily chose to present his testimony. (*See Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) ("[T]he privilege [against self-incrimination] is fulfilled only when the person is guaranteed the right 'to remain silent **unless he chooses** to speak in the unfettered exercise of his own will.'") (Emphasis added) (citation omitted). "Volunteered statements ... are not barred by the Fifth Amendment...." *Estelle v. Smith,* 451 U.S. 454, 469, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). There is no reversible error with respect to the Superior Court's decision regarding the admissibility of Dr. Fink's testimony at retrial.

(or to his past treatment providers) if he were to testify.") In his November 2, 2007 motion *in limine,* Appellant sought to exclude statements he made to his treating psychologist and psychiatrist, with whom he treated for "his marital difficulties." Motion *In Limine,* 11/2/07, at 1. Dr. Ailleo was the psychologist who treated Appellant and his wife five times "in March through May of 2001 ... for marital counseling," and Dr. Corraddo was Appellant's treating psychiatrist beginning May 16, 2001. N.T., 5/1/02, at 82–84. It was Dr. Fink, Appellant's expert, who reviewed their records during Appellant's first trial. *Id.* at 82. At the hearing on the motion in limine, Appellant's counsel told the court, "I'm asking in the Motion in Limine that the Commonwealth not be allowed to cross-examine my client in the event he testifies **as to anything he said to his psychiatrist....**" N.T., 12/27/07, at 8 (emphasis added). Hence, our discussion is appropriately crafted.

■ The analysis is a bit more complex regarding the testimony of Dr. Michals, the Commonwealth's expert.[7] As noted *supra, Boyle* and *Santiago* involved admission at retrial of either the testimony of the defendant himself (*Boyle*) or the testimony of the defendant's expert (*Santiago*). Their holdings do not squarely address the scenario where the trial court compels a defendant to undergo a psychiatric evaluation by a Commonwealth expert, and the Commonwealth then seeks to introduce that witness's testimony at a retrial where the defendant no longer asserts a mental health defense.

Nevertheless, there is Pennsylvania case law addressing a criminal defendant's Fifth Amendment rights in the context of a mental health examination by the Commonwealth's expert. Initially, in *Commonwealth v. Morley,* 545 Pa. 420, 681 A.2d 1254 (1996), this Court held that where a defendant raises a mental infirmity defense, he cannot refuse examination by a Commonwealth psychiatrist based upon his privilege against self-incrimination under the Fifth Amendment. We stated, "The rationale supporting our holding ... is that where a defendant has raised a mental disability defense, a defendant has waived his or her privilege against self-incrimination and may be compelled to submit to a psychiatric exam so that the Commonwealth can prepare its case in rebuttal." *Id.* at 1258 n. 5.

In *Sartin,* however, we explained that a criminal defendant does "not categorically waive his Fifth Amendment privilege against self-incrimination merely by announcing his intention to submit expert psychiatric testimony." *Sartin,* 751 A.2d at 1143. The issue before us in *Sartin* was whether the Fifth Amendment to the United States Constitution precluded the trial court from ordering the defendant in a capital case to submit to an independent pretrial psychiatric examination, where the defendant had already been examined by his own

7. Appellant himself acknowledges that reference to compelled testimony in this situation is not clear cut. "Here, appellant may not have been compelled to undergo the exam by the state's psychiatrist in the strictest sense...." Appellant's Brief at 19. Indeed, if Appellant would not have presented the diminished capacity defense in the first trial, he would not have been examined by Dr. Michals for rebuttal.

psychiatrist and intended to use his psychiatrist's findings only to establish mitigating factors during the penalty phase if he was convicted. This Court held that the Fifth Amendment did not insulate the defendant from having to submit to an independent pretrial psychiatric examination under those circumstances.

Further, we noted that Sartin did not categorically waive his Fifth Amendment privilege against self-incrimination merely by announcing his intention to submit expert psychiatric testimony at the sentencing hearing. We concluded that the "Commonwealth may only utilize the results of its psychological examination in a rebuttal capacity, and **only as to those issues which have been implicated by the expert testimony of the defendant's psychiatrist.**" *Id.* at 1143 (emphasis added).

It stands to reason under the present circumstances that if Appellant testified on retrial, and the Commonwealth was entitled to utilize Dr. Fink's testimony as substantive evidence, which is the result supported by *Boyle* and *Santiago*, then the testimony of Dr. Michals clearly could have been utilized in response to those issues implicated by Dr. Fink's testimony. *Sartin, supra.* The trial court's limitation that the evidence could be used only for impeachment provided an additional layer of protection.

■ Synthesizing the decisions of *Boyle, Santiago, Morley* and *Sartin*, the following framework emerges. A defendant who raises a mental health defense can be compelled to submit to a psychiatric examination. *Morley*, 681 A.2d at 1257. In submitting to this examination, however, the defendant does "not categorically waive his Fifth Amendment [rights]." *Sartin*, 751 A.2d at 1143. When the defendant voluntarily presents a mental health defense that he subsequently abandons, the Commonwealth may, upon retrial, utilize the results of its psychological examination as to those issues that have been implicated by the defendant's own expert. *Santiago, see also Boyle, supra.*

Even if *Sartin* applied in the instant case, it would be pertinent only to evidence obtained from the Commonwealth expert, Dr. Michals. It would not apply to any of the pre-arrest statements made to Appellant's psychiatrist before the murder nor preclude any of the statements to Dr. Fink, as those statements were offered voluntarily by Appellant at his first trial. Clearly then, all of the impeachment evidence could have been elicited solely from Dr. Fink, who was in possession of the same mental health records and reports that Dr. Michals possessed. Thus, any error regarding admission of the Commonwealth's evidence would appear to be harmless. Appellant made admissions of guilt to both Dr. Fink and Dr. Michals.[8] Both Dr. Fink and Dr. Michals testified at the first trial that Appellant said that he was arguing with his wife Hollie in the kitchen, she had a knife she swung at him, she retreated upstairs to the bedroom and he followed her where the "struggle persisted," and the next thing he remembers is Hollie on the ground with a hole in her chest and Appellant was laying or laid on top of her. N.T., 5/1/02, at 88–89, 140–41. Dr. Fink further stated, "I don't think he [Appellant] ever denied to me that he stabbed her." *Id.* at 104. Since the same admissions could have been established by either expert's testimony, there is no reasonable possibility that the error may have contributed to the verdict. *Commonwealth v. Mitchell,* 576 Pa. 258, 839 A.2d 202 (2003) (error deemed harmless where appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict).

Appellant argues the applicability of the Third Circuit Court of Appeals decision in *Gibbs v. Frank, supra.* Subsequent to his evaluation by a self-sought court-appointed psychiatrist "to

8. We note that review and further recitation of the testimony of each expert is hampered by Appellant's failure to direct this Court's attention to the specific statements that underlie his claim. Indeed, the Commonwealth argued that it, and presumably, this Court, are "left to guess as to the specific statements with which [Appellant] takes issue" and further, Appellant "makes no proffer here as to what his testimony would have been" or "**what** psychiatric interview underlies the challenge." Commonwealth Brief at 8 (emphasis in original). While we acknowledge the accuracy of these complaints, we have discerned sufficient challenge by Appellant to put the claim to rest.

explore the possibility of raising a mental infirmity defense," Gibbs notified the Commonwealth that he in fact intended to raise a mental infirmity defense at trial. The Commonwealth secured a court order requiring him to submit to examination by a state psychiatrist; both experts testified at the defendant's first trial. After the defendant's conviction was overturned on appeal on unrelated grounds and he was granted a new trial, Gibbs decided to forego a mental infirmity defense at retrial, and, instead, he contested identity. The Commonwealth filed a motion *in limine* requesting permission to call its expert as a witness to testify about the inculpatory statements Gibbs made to him. The trial court granted the Commonwealth's motion. Following a second conviction, Gibbs appealed to the Superior Court, which affirmed, and we denied his petition for allowance of appeal. Gibbs then sought *habeas corpus* relief in the district court, which denied the petition as to all claims. On appeal, the court of appeals suggested that because the defendant's interview with the Commonwealth's expert was mandated by the state court, it was with a state-selected doctor, and the statements were not offered at the second trial **in rebuttal,** a Fifth–Amendment violation would have occurred. *Id.* at 275. The court of appeals went on to discuss the specific Fifth Amendment warnings given in that case and possible explanations of the term-of-art, "mirandized." Those issues affected the court's analysis and ultimate result, however, they are not raised herein.

This Court is not bound by *Gibbs;* it is a federal case interpreting federal law. *Hall v. Bd. of Probation and Parole,* 578 Pa. 245, 851 A.2d 859, 865 (2004) ("[T]his Court has clearly indicated that [it is] not obligated to follow the decisions of the Third Circuit [Court of Appeals] on issues of federal law."). More importantly, we decline to adopt its reasoning because it does not comport with *Santiago, Boyle,* and *Morley* discussed *supra.*

Accordingly, the order of the Superior Court is affirmed.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a dissenting opinion.

SAYLOR, Justice, dissenting.

I respectfully differ with the majority's reasoning, which appears to conflate the analyses concerning the admission of Dr. Paul Fink's testimony (resulting from a *voluntary* psychiatric examination) and the admission of Dr. Timothy Michals' testimony (resulting from a *compelled* psychiatric examination by a Commonwealth expert).

Initially, I find the majority's substantial focus on the admissibility of the expert psychiatric testimony of Dr. Fink to be misdirected, as Appellant does not argue that permitting the Commonwealth to introduce such testimony would violate his Fifth Amendment rights. Instead, Appellant consistently maintains that the presentation of testimony from Dr. Michals would impermissibly allow the Commonwealth to use Appellant's *compelled* statements against him. *See, e.g.,* Brief of Appellant at 14 ("Fifth Amendment doctrine, as well as a long history of Pennsylvania decisional law, treat the compelled disclosure of evidence resulting from a psychiatric defense to be a limited one ..."); *id.* at 23 (arguing that Appellant's right to testify "was abridged by the threatened use of compelled testimony, testimony that by its nature was inadmissible for all purposes other than to rebut a mental health defense").[1] Similarly, the case law upon which the majority relies predominantly addresses situations in which a defendant's *voluntary* statements are used at a second trial. *See Commonwealth v. Santiago,* 541 Pa. 188, 197–99, 662 A.2d 610, 614–15 (1995) (holding that the defendant could not claim the benefits of the psychiatrist-patient privilege to exclude evi-

1. If it is not clear enough from the above text, my comments are addressed to the arguments presented to this Court, which, of course, define the scope of our present review. *See Commonwealth v. Briggs,* 608 Pa. 430, 462 n. 19, 12 A.3d 291, 310 n. 19 (2011). Accordingly, the majority's rejoinder, by way of reference to matters presented to the trial court, *see* Majority Opinion, at 317–18 n. 6, 42 A.3d at 995–96 n. 6, is simply nonresponsive.

dence at a second trial when the privilege had been waived at the first trial because the presentation of psychiatric testimony in support of an insanity defense had been voluntary); *Commonwealth v. Boyle,* 498 Pa. 486, 498, 447 A.2d 250, 256 (1982) (explaining that a defendant cannot object to having his voluntary testimony used against him because "[h]is constitutional privilege, as far as that testimony is concerned, is waived, and cannot be reclaimed in any subsequent trial of the same indictment") (quoting *Commonwealth v. House,* 6 Pa.Super. 92 (1897)).

In segueing to the actual issue in controversy—that is, the authorization of the admission of compelled disclosures—the majority offers the following reasoning:

> [T]he Commonwealth was entitled to utilize Dr. Fink's testimony as substantive evidence, ... the testimony of Dr. Michals clearly could have been utilized in response to those issues implicated by Dr. Fink's testimony.

Majority Opinion, at 320, 42 A.3d at 997. The majority attempts to bolster this conclusion with an abbreviated, abstracted recitation of the testimony of Drs. Fink and Michals from Appellant's first trial. *See id.* at 319–21, 42 A.3d at 997–98.

The majority's recitation, however, is neither complete nor wholly accurate. Initially, the while the majority asserts that Appellant made "admissions of guilt" to both psychiatrists, in fact he indicated to both that he had no memory of the killing and/or had "blacked out." *See, e.g.,* N.T. May 1, 2002, at 89 (testimony of Dr. Fink); *id.* at 140 (testimony of Dr. Michals). Although Appellant's statements may support the conclusion that he physically stabbed the victim, they do not, in fact, comprise an admission of guilt relative to the charge of first-degree murder.

Moreover, the testimony of Drs. Fink and Michals differed in other material ways. For example, Dr. Fink concluded that Appellant was psychotic and unable to form the specific intent to kill, *see* N.T., May 1, 2002, at 89–91; whereas, Dr. Michals opined that Appellant's mental state did not interfere with his

capacity to form intent, but rather that he simply lied during the psychiatric evaluations, *see id.* at 137, 158.[2]

Furthermore, the majority opinion seems to sanction the Commonwealth's impeachment of a witness whose testimony it has presented. *See* Majority Opinion, at 320, 42 A.3d at 997 ("[I]f Appellant testified on retrial, and the Commonwealth was entitled to utilize Dr. Fink's testimony as substantive evidence, . . . then the testimony of Dr. Michals clearly could have been utilized in response to those issues implicated by Dr. Fink's testimony."). This, however, appears to contemplate the Commonwealth's impeachment of its own witness, which presents an additional analytical hurdle for which the majority does not account, even absent consideration of the fact that the impeachment is via compelled, as opposed to voluntary, disclosures.[3]

I am sympathetic to the Commonwealth's argument that Appellant's claim is vague in character, since it implicates a range of possibilities which never occurred, given that Appellant chose not to testify. As Appellant stresses, however, the

---

**2.** An additional difference in the testimony of the two experts concerns an event that allegedly happened a long time prior to the killing—an event that could have had a significant impact on the jury. Dr. Michals testified that he had "gathered information that the Defendant used a gun while he was involved in a fight when he was 19 or 20 with a boyfriend of a girl he had gotten involved with." N.T. May 1, 2002, at 144. Dr. Fink, however, did not mention this incident. *See id.* at 92.

**3.** The majority does not appear to view Appellant's statements to Dr. Michals as compelled in the first instance, since absent the presentation of a diminished capacity defense, Appellant would not have been subjected to an examination by the Commonwealth's psychiatric expert. *See* Majority Opinion, at 319 n. 7, 42 A.3d at 996 n. 7. However, the majority, and the caselaw upon which it relies, nonetheless characterize such statements as compelled. *See id.* at 320, 42 A.3d at 997 ("A defendant who raises a mental health defense can be compelled to submit to a psychiatric examination.") (citing *Commonwealth v. Morley*, 545 Pa. 420, 426–27, 681 A.2d 1254, 1257 (1996)). Moreover, I agree with Appellant that the admission of such statements becomes particularly problematic when the Commonwealth seeks to use them at a second trial in which Appellant is not putting his mental status at issue or presenting his own psychiatric expert. *Cf. Commonwealth v. Sartin*, 561 Pa. 522, 528, 751 A.2d 1140, 1143 (2000) ("The Commonwealth may only utilize the results of its psychological examination in a rebuttal capacity, and only as to those issues which have been implicated by the expert testimony of the defendant's psychiatrist.").

present review is of a pre-trial ruling compelling his submission to an oral examination, which was of substantial relevance to his own decision-making. Moreover, the Commonwealth chose to go forward with its efforts to obtain authorization to use compelled disclosures; thus, it assumed the risk associated with the ensuing appellate review of such license. In this regard, meritorious preserved claims of trial court error implicate the harmless error standard, pursuant to which the Commonwealth is required to demonstrate, beyond a reasonable doubt, that the error had no effect on the verdict. *See Commonwealth v. Howard,* 538 Pa. 86, 100, 645 A.2d 1300, 1307 (1994). Thus, to the degree the trial court erred, as I believe it did,[4] it is the Commonwealth's responsibility, and not Appellant's, to address the vagaries.[5]

Finally, I note that the majority rejects the analysis of the United States Court of Appeals for the Third Circuit in *Gibbs v. Frank,* 387 F.3d 268 (3d Cir.2004) (explaining that the scope of a defendant's waiver of his right against self-incrimination in connection with a compelled examination must be understood in light of any *Miranda*-like warnings issued to the defendant at the time of the examination). *See* Majority Opinion, at 321, 42 A.3d at 998. I differ with this approach, since warning-type issues have not been briefed in the present case. To the extent the Commonwealth may have wished to rely on such warnings as a basis for the admission of Dr. Michals' testimony, it seems to me that it should have developed this on the record in the pre-trial proceedings in the second case. *Cf. Commonwealth v. Bronshtein,* 547 Pa. 460, 473, 691 A.2d 907, 913 (1997) ("The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his *Miranda* rights. In order to do so, the Commonwealth must establish that the warnings were given,

---

4. In this regard, I also note that the trial court, like the majority, relied substantially on authorities having to do with voluntary, and not compelled, disclosures. *See* Trial Court Op. at 6–7.

5. Indeed, it seems to me to be very important for the prosecution to make clear on the record the nature and scope of compelled disclosures which it seeks to have admitted.

and that the accused manifested an understanding of the warnings.") (internal citation omitted).