J-S06039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MICHAEL ARNOLD | |
| Appellant | No. 3644 EDA 2015 |

Appeal from the Judgment of Sentence November 13, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0006961-2009

BEFORE: MOULTON, RANSOM, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED MARCH 10, 2017**

Appellant, Michael Arnold, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following a jury trial and his convictions for rape by forcible compulsion,[1] rape of a child,[2] involuntary deviate sexual intercourse ("IDSI") with a person less than 16 years of age,[3] IDSI with a child,[4] and aggravated indecent assault without consent.[5] Appellant challenges the weight and sufficiency of the evidence,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(a)(1).

[2] 18 Pa.C.S. § 3121(c).

[3] 18 Pa.C.S. § 3123(a)(7).

[4] 18 Pa.C.S. § 3123(b).

[5] 18 Pa.C.S. § 3125(a)(1).

the admission of hearsay evidence, and the discretionary aspect of his sentence. We affirm.

The trial court summarized the facts of this case as follows:

> In 1993, Appellant and his daughter K.S. (the complainant) moved into a residence on Hancock Street in Philadelphia. The complainant was six years old.[6] At that time, Appellant began engaging in oral and anal intercourse with the complainant inside the house. When the complainant was eleven years old, Appellant started having vaginal intercourse with her. Appellant sexually abused the complainant "as frequently as [one] washed [their] clothes." In 1999, the complainant moved to Puerto Rico with her mother, . . . while Appellant remained in Philadelphia. The complainant lived in Puerto Rico from August of 1999 to May of 2000. While in Puerto Rico, she did not disclose the sexual abuse to her mother.

---

[6] The complainant testified in response to the Commonwealth as follows:

> [The Commonwealth]: When this first started happening, your earliest memory is about six. When you were very young, what did you think about the fact this was happening between you and your dad?
>
> A: I thought it was normal.
>
> Q: Tell us about that. What do you mean?
>
> A: I though all little girls did that with their dad. And he wasn't my real dad. I thought that's what I had to do in order to keep him as my dad.
>
> Q: What made you think that?
>
> A: Because that's all I knew.

N.T. at 10.

After returning to Philadelphia in 2000, the complainant lived with Appellant at a different residence from where the sexual abuse first occurred. She testified that while living with Appellant on Concord Road, he continued to sexually molest her. When asked why she voluntarily lived with Appellant, the complainant explained that she did not want to return to Puerto Rico with her mother, and the only opportunity to stay in Philadelphia was to live at the Concord Road residence.

In 2003, when she was fifteen years old, the complainant called Appellant to ask if she could sleep at her friend's house. Appellant replied, "You know what that means." After her friend . . . overheard this conversation, she asked the complainant to explain Appellant's statement. The complainant proceeded to disclose the sexual abuse to [her friend]. She also subsequently disclosed the sexual abuse to her boyfriend, who in turn disclosed the relationship to the complainant's mother. The complainant also met with Detective Brown, a detective in the Special Victims Unit, where she wrote a statement describing Appellant's actions from 1993 to 2003.

The complainant maintained a typical father/daughter relationship with Appellant after she reported the sexual abuse to the authorities. Specifically, Appellant helped her get a job at the same company where he worked, and she took him to work every morning.

The complainant did not disclose to anyone what took place between herself and Appellant until 2003. When asked why she did not tell her mom, one of her siblings, friends, teachers, or guidance counselors at any time over the ten-years of abuse she responded, "I was scared. I was scared to break up my family which it has done. . . . I was scared no one would believe me." Although there were between eight and thirteen people living in the Hancock residence when the sexual abuse took place, the complainant testified that Appellant would wait until she was alone or when [her mother] worked nights. She stated, "I always had my own room . . . [and] he would come [in]. At times when my mom was holding down two jobs . . . he would have me in his bedroom."

- 3 -

The complainant did not consent to any sexual acts with Appellant. When asked to describe her earliest memory of the abuse, the complainant testified, "I was sleeping. In my dream I was playing in the fire hydrant. And I just got a sudden urge to go to the bathroom, I felt like I had a bowel movement. When I woke up he was inside me anally." When asked whether she had any other memories of the abuse, the complainant testified that Appellant would come in her room while she was sleeping, or come in the bathroom while showering, and then proceed to sexually molest her. She submitted to Appellant's sexual demands because she thought engaging in sexual intercourse was the only way to keep Appellant as her father.

As time progressed, sexual acts became a form of payment. If the complainant misbehaved, she would not be punished so long as she slept with Appellant. If she asked Appellant to spend the night at a friend's house, he would state "you know what you [have] to do" or "you know you got to give me something." In addition to vaginal intercourse, Appellant also stuck his fingers and tongue in her vagina. She was also forced to reciprocate by performing oral sex on Appellant. As a result of the sexual abuse, the complainant had nightmares and wet her bed until she was about twenty-one years old, approximately five years after the sexual abuse ended. She testified, "[Appellant] took away my confidence and my trust in men. He took away my ability to show affection to people."

Trial Ct. Op., 7/26/16, at 2-4 (record citations omitted).[7]

On November 13, 2015, Appellant was sentenced to $16\frac{1}{2}$ to 45 years' imprisonment. Appellant filed a post-sentence motion which was denied. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P.

---

[7] We note that Appellant incorporates the trial court's factual summary in his brief. *See* Appellant's Brief at 7.

1925(b) statement of errors complained of on appeal and a supplemental

Rule 1925(b) statement.[8]  The trial court filed a responsive opinion.

Appellant raises the following issues for our review:

A. The evidence was insufficient to support the guilty verdicts as there was no physical evidence, such as D.N.A., medical records, etc., proving sexual assaults occurred over a ten year period.

B. The guilty verdicts were against the weight of the evidence, as despite living in a small and crowded Philadelphia row-home, there are no witnesses to any assaults; despite testifying she would have done anything to stop the abuse, the complaining witness at times ran away from her Mother and at times chose to live with Appellant; and Appellant's good character for being a peaceful and law-abiding citizen is reasonable doubt in itself.

C. The trial court erred in allowing into evidence multi-layered hearsay (for truth of the matter asserted) by complainant's Mother that complaining witness told her that Appellant used language which Mother described as "bedroom conversation," specifically "give me some."

D. The sentence was excessive and the trial court abused discretionary aspects of sentencing and failed to properly consider mitigating factors (good character, familial support, positive position in community, military service, etc.) and that the Appellant is extremely low risk for recidivism.

Appellant's Brief at 6.

---

[8] The supplemental statement was filed with permission from the trial court and is virtually identical to the original Rule 1925(b) statement.

First, Appellant contends that "the evidence was wholly insufficient to support the guilty verdicts." *Id.* at 13. In support of this claim, he avers as follows:

> In the instant case . . . there was no D.N.A., no medical records and no independent eye witnesses to corroborate the complainant's assertions. There was no objective, unbiased evidence proving the appellant committed any abuse. No corroborating physical evidence whatsoever. **The only evidence was the unreliable testimony of the complainant.** The complainant testified she would have done anything to stop the abuse. However, she inexplicably chose to live with [A]ppellant rather than her own mother for significant periods of time.

*Id.* at 13 (emphasis added).

Our review is governed by the following principles: "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict. . . .
>
> &ast; &ast; &ast;
>
> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt. . . .

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235-37 (Pa. 2007) (citations and quotation marks omitted).

As a prefatory matter, we consider whether Appellant has waived this sufficiency of the evidence claim. The issue presented in Appellant's Rule 1925(b) statement is as follows: "The evidence was insufficient to support the guilty verdicts beyond a reasonable doubt as there was no physical evidence, such as D.N.A., medical records, etc., proving that sexual assaults occurred over a ten year period." Appellant's Pa.R.A.P. 1925(b) Statement, 1/6/16, at 1.

> [W]hen challenging the sufficiency of the evidence on appeal, the [a]ppellant's 1925 statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. Such specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. Here, [the a]ppellant . . . failed to specify which elements he was challenging in his 1925 statement . . . . While the trial court did address the topic of sufficiency in its opinion, we have held that this is "of no moment to our analysis because we apply Pa.R.A.P.1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim."
>
> *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) [ ].

*Commonwealth v. Garang*, 9 A.3d 237, 244 (Pa. Super. 2010) (some citations omitted).

- 7 -

Analogously, in the instant case, although the trial court addressed the issue of the sufficiency of the evidence, Appellant's 1925(b) statement failed to "specify the element or elements upon which the evidence was insufficient" and failed to specify which convictions he was challenging. ***See id.*** Thus, we could find the issue waived. ***See id.*** We decline to find waiver on this basis.

We consider whether Appellant raises a sufficiency of the evidence claim but argues the weight of the evidence. Appellant contends that "the only evidence was the unreliable testimony of the complainant." Appellant's Brief at 13. "An argument regarding the credibility of a witness's testimony goes to the weight of the evidence, not the sufficiency of the evidence." ***Commonwealth v. Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014). In ***Commonwealth v. DeJesus***, 860 A.2d 102 (Pa. 2004), our Pennsylvania Supreme Court opined:

> [The a]ppellant's claim challenges the weight, not the sufficiency, of the evidence. The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. . . . This Court cannot substitute its judgment for that of the jury on issues of credibility.
>
> * * *
>
> As we will not disturb the jury's credibility determinations, this claim fails.

***Id.*** at 107 (citations omitted).

- 8 -

In the case *sub judice*, Appellant's claim challenges the weight of the evidence. ***See Melvin***, 103 A.3d at 43; ***DeJesus***, 860 A.2d at 107. We cannot substitute our judgment for that of the jury. ***See id.*** This claim fails. ***See id.*** In any event, "[t]his Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." ***Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa. Super. 2006) (citation and quotation marks omitted). Having reviewed the sufficiency of the evidence, we conclude no relief is due. ***See id.***

Next, Appellant contends

> [i]n the instant case, the guilty verdicts were against the weight of the evidence. As mentioned above, there was no corroborating evidence. Most compelling however, was that there were significant periods when the complainant chose to live with [A]ppellant instead of her own mother, which is compelling evidence proving she was not under any distress while in [A]ppellant's custody, much less being abused. The complainant's testimony lacks credibility. It is difficult to believe complainant's testimony that she would have done anything to stop the abuse, but then subsequently flee from her mother and elect to live with her alleged abuser for extended periods of time. Appellant's good character is reasonable doubt in itself, as well.

Appellant's Brief at 14.

Our Supreme Court has held that

> [a] motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the

evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Ramtahal***, 33 A.3d 602, 609 (Pa. 2011) (citations omitted).

In the case *sub judice*, the trial court opined:

Here, the Commonwealth reliably established the required elements for each charge through witness testimony. The trier of fact found the complainant credible when she testified that Appellant anally, vaginally, and orally molested her over a ten-year period. The guilty verdicts do not shock one's sense of justice. The fact that other people lived in the house or that the complainant may have chosen to live with her father instead of her mother made her testimony no less credible. Rather, these facts simply demonstrate the difficult and complicated decisions facing a young girl in crisis and underscore the well-known fact that sex crimes are almost always committed in secret. Therefore, the guilty verdicts were not against the weight of the evidence . . . .

Trial Ct. Op. at 9-10. We agree no relief is due.

Appellant asks this Court to reweigh the evidence. This we cannot do. ***See Ramtahal***, 33 A.3d at 609. Instantly, the verdict was "not so contrary to the evidence as to shock one's sense of justice." ***See id.*** We discern no abuse of discretion by the trial court. ***See id.***

Next, Appellant avers the trial court erred in admitting hearsay evidence. We reproduce Appellant's argument verbatim.

> Here the complainant's mother testified that the complainant told her that [A]ppellant allegedly made statements to complainant, specifically "give me some." This was certainly admitted to prove that [A]ppellant molested complainant, so it was plainly an assertion made for the truth of the matter asserted. Further, it does not fall into the admission by party opponent exception and is unreliable because it was a statement made to the mother *by the complainant* and not [A]ppellant to the mother. This multi-layered unreliable nature of this statement, described by the mother as "bedroom conversation," is the very type of hearsay statement that must be kept out of evidence pursuant to the Rules of Evidence.

Appellant's Brief at 14-15. We find no relief is due.

Our review is guided by the following principles. "The admission of evidence is committed to the sound discretion of the trial court, and our review is for an abuse of discretion." *Commonwealth v. Rosen*, 42 A.3d 988, 993 (Pa. 2012) (citation omitted).

> The law with regard to whether a trial court may properly admit prior consistent statements of a child victim of sexual assault, as relied on by the trial court, is well-settled.
>
> > To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay. **However, when they are offered to corroborate in-court testimony, prior consistent statements are not hearsay.**
> >
> > . . . .
> >
> > The general rule precluding corroboration of unimpeached testimony with prior consistent

- 11 -

statements is subject to exceptions when particular circumstances in individual cases tip the relevance/prejudice balance in favor of admission. . . .

. . . . .

Similarly, jurors are likely to suspect that unimpeached testimony of child witnesses in general, and child victims of sexual assaults in particular, may be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event. Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses, at the trial court's discretion, because such statements were made at a time when the memory was fresher and there was less opportunity for the child witness to be effected by the decaying impact of time and suggestion.

. . . . .

**The principle exception to the general rule of exclusion is that prior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence.** Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two.

*Commonwealth v. Hunzer*, 868 A.2d 498, 512 (Pa. Super. 2005) (citation omitted and emphases added).

At trial, the complainant testified, *inter alia*, as follows:

[The Commonwealth]: Before he would do these things, would he say anything to you?

A: He did. But most of the time it was like I was either asleep and I would wake up to it. But as I got older it was more like a payment of some sort.

For instance, when we got in trouble and were put on punishment, if I slept with him we could get off [sic] of punishment. If I asked him for anything like to spend the night over a friend's house, to do [sic] normal kids would do without having to sleep with their fathers to do it, that was payment.

Q: What would he say about that?

A: Mostly, "you know what you got to do." If I asked can I spend the night. He'll say, "you know what you got to do," or "you know you got to give me something." It was implied.

N.T., 10/15/14, at 9-10.

The complainant's mother testified to the follows:

[The Commonwealth]: When you were talking with [complainant] and she sharing these things with you, did she ever tell you what [Appellant] said to her?

A: He would use bedroom conversation that he used with me. And one of those things was "give me some. . . ."

*Id.* at 80-81.

The Commonwealth offered the statement to rebut Appellant's implied claim that the complainant fabricated the abuse. *See* Pa.R.E. 613(c). The trial court found the complainant's statement to her mother was admissible

- 13 -

as a prior consistent statement. Trial Ct. Op. at 10.[9] We discern no abuse of discretion. **_See Rosen_**, 42 A.3d at 993. We agree this claim has no merit. **_See Hunzer_**, 868 A.2d at 512.

Lastly, Appellant contends that the trial court abused its discretion in its excessive sentence. Appellant argues:

> [I]t is clear from the record, that the [c]ourt did not give proper weight (or any weight) to factors such as [A]ppellant's lack of criminal record, good character, military service, traumatic childhood, positive position in the community, familial support, extremely low risk to recidivize, etc. The [t]rial [c]ourt failed to properly weigh and/or consider factors that should have drastically lessened the sentence. For these and for the foregoing reasons, the [t]rial [c]ourt entered an excessive sentence.

Appellant's Brief at 15 (citations omitted).

---

[9] We note a typographical error in the trial court's opinion. The trial court cites Pa.R.E. 603(c) in support of the admissibility of the evidence. The court is apparently referring to Rule 613(c) which provides as follows:

> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

As a prefatory matter, we consider whether Appellant has waived this issue on appeal. In **Commonwealth v. Griffin**, 149 A.3d 349, 353–54 (Pa. Super. 2016), this Court opined:

> A challenge to the discretionary aspects of sentencing does not entitle an appellant to review as of right. In order to invoke this Court's jurisdiction to address such a challenge, the appellant must satisfy the following four-part test: the appellant must (1) file a timely notice of appeal pursuant to Pa.R.A.P. 902, 903; (2) preserve the issues at sentencing or in a timely post-sentence motion pursuant to Pa.R.Crim.P. 720; (3) ensure that the appellant's brief does not have a fatal defect as set forth in Pa.R.A.P. 2119(f); and (4) set forth a substantial question that the sentence appealed from is not appropriate under the Sentencing Code under 42 Pa.C.S. § 9781(b).
>
> While [the a]ppellant filed a timely notice of appeal and preserved his sentencing claim in a timely post-sentence motion, he failed to include a Rule 2119(f) statement in his appellate brief. When challenging the discretionary aspects of sentence, an appellant must include in his or her brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. If the Commonwealth objects to the appellant's failure to comply with Pa.R.A.P. 2119(f), the sentencing claim is waived for purposes of review.

**Id.** at 353 (some citations and quotation marks omitted).

Analogously, in the case *sub judice*, Appellant did not comply with Pa.R.A.P. 2119(f). The Commonwealth objected to Appellant's failure to include a separate Rule 2119(f) statement in his appellate brief. **See** Commonwealth's Brief at 18. Therefore, the issue is waived for our review. **See Griffin**, 149 A.3d at 353.

Judgment of sentence affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2017