J. S03010/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ADAM ROSEN, | : | No. 1260 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, April 9, 2014,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0005182-2001

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND OTT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:                    **FILED MAY 11, 2015**

Appellant appeals the order denying his second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Finding no error on appeal, we affirm.

Appellant was originally convicted by jury trial of first degree murder on May 2, 2002 in connection with the June 30, 2001 stabbing death of his wife.  On June 6, 2003, this court affirmed the judgment of sentence, and on October 2, 2003, our supreme court denied appeal.  ***Commonwealth v. Rosen***, 830 A.2d 1052 (Pa.Super. 2003) (unpublished memorandum), ***appeal denied***, 832 A.2d 436 (Pa. 2003).  On September 27, 2004, appellant filed his first PCRA petition.  While the petition was dismissed on March 1, 2005, on November 23, 2005, this court reversed on the basis that trial counsel was ineffective in failing to call character witnesses.

*Commonwealth v. Rosen*, 890 A.2d 1105 (Pa.Super. 2005) (unpublished memorandum), *appeal denied*, 906 A.2d 542 (Pa. 2006).

On July 21 and 22, 2008, appellant was tried at a bench trial, and was again convicted of first degree murder. On December 8, 2009, this court affirmed the judgment of sentence, and on April 25, 2012, our supreme court affirmed this court. *Commonwealth v. Rosen*, 988 A.2d 146 (Pa.Super. 2009), *affirmed*, 42 A.3d 988 (Pa. 2012).

On April 5, 2013, appellant filed the instant, counseled PCRA petition. Following a hearing on March 3, 2014, appellant's PCRA petition was denied by order entered April 9, 2014. This timely appeal followed.

Appellant raises a single claim of ineffective assistance of trial counsel on appeal indicating that counsel's failure to rebut the testimony of the Commonwealth's medical expert, Dr. Ian Hood, with conflicting expert medical opinion was ineffective. The particular testimony to which appellant objects is as follows:

> Q. Doctor, when we spoke, you had mentioned something about this not being an overkill?
>
> A. Yes. That's really a term of art. It has no particular scientific basis.
>
> It's a matter of experience, in that -- where there's a lot of emotion involved. You see it a lot in domestic cases, particularly homosexual males is where it was first described. Then the person who's doing the killing just continues to flail away with whatever weapon they're using at the victim, long after the victim has ceased to struggle.

> We call that overkill. It is often characterized by a multiplicity of wounds, much more than you see here. And clear evidence of the wounds being inflicted on somebody. There is no bruising anymore. So you have a couple of dozen wounds that are clustered in one area, all going in the same way, indicating that the individual is no longer moving, and that we would call overkill.
>
> Q. Are the injuries to Hollie consistent with an overkill, in your opinion?
>
> A. Not in number and not in their distribution, either. She's clearly moved while being -- while sustaining these wounds.

Notes of testimony, 7/21/08 at 110-111.

Essentially, appellant complains that he was relying upon his alleged rage or heat of passion to negate the specific intent to kill necessary for a first degree murder conviction and that this testimony served to vitiate that defense. Appellant calls attention to the fact that the trial court specifically found a specific intent to kill based upon the victim's wounds. (Appellant's brief at 17.) Appellant asserts that expert medical opinion was available to indicate that the wounds were consistent with rage or heat of passion.

We find no error with the PCRA court's holding. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court, it is our determination that there is no merit to the question raised on appeal. Judge Demchick Alloy's thorough, 23-page opinion, filed on June 16, 2014, comprehensively discusses and

properly disposes of the question presented. We will adopt it as our own and affirm on that basis with the following additional analysis.

We find that although Judge Tressler relied upon the wounds, it was not because they indicated a lack of rage or heat of passion. It is fortunate, in this regard, that we are reviewing a bench trial, because when the trial judge announced his decision, he related the reasoning behind his decision, and in so doing, allowed this court to look into the mind of the finder-of-fact. While the trial judge did base his decision on the wounds, he clearly did not rely on Dr. Hood's testimony as negating appellant's assertion of heat of passion:

> Now, I don't think the Commonwealth has proven beyond a reasonable doubt that the initial argument did not occur downstairs. There is no evidence that the former Mrs. Rosen was not an instigator in the argument.
>
> However, when they went upstairs, things changed drastically, and I don't think that that had anything to do with the argument they were having or the fact that she might even have threatened him.
>
> I think it had everything to do with the fact that he had finally come down with his decision as to what he was going to do with his wife. I base that on the wounds.
>
> First of all, there is no doubt in my mind that the chest wound occurred before the neck wound. That chest wound was wide. It was gaping. It was three inches long. It went through two ribs. It was five inches deep. That was the power. It entered the upper left lobe of the lung.

The most important thing about that was there was a moving motion, as was described by Doctor Hood, which meant there was a struggle. She was alive.

The reason that that gaping hole was an inch-and-a-half across was because, as she moved, the knife, in turn, stayed solid, and she turned with her body; that widened the hole.

I don't doubt that the first witness that we had -- I forget his name -- the gentleman going to the bar, for the bar exam. I don't doubt that he heard a scream. I'm confident, beyond a reasonable doubt, that that is the scream he heard.

The other gentleman was walking the dog. Mr. Winters pointed out he didn't hear anything.

That's because, I looked at the record, and he was never asked by anybody at any time. That's why there was no evidence of that.

I believe that at the time that that scream went, that that was when the knife was in her chest. And in order to silence her, because of that scream, that's when Adam plunged the knife into her neck, and he did it with the intention of killing her.

Then to even further prove that intent, after she had had her part of her voice box sliced off and her jugular cut -- by the way, that was another three-and-a-half inch long by one-and-a-half inch crossway wound, and that went six or seven inches deep. I believe Doctor Hood said it almost came out the other side of her throat. That certainly was a wound that was intended to kill.

Then on top of that, she's now rolled over or slides down. The knife wound in the upper back goes in so deep it goes into the right lung. Then, again, there is some type of movement, although not nearly as much.

> Then finally, the three stabs at the bottom of the upper body. They're each four inches deep. They go right in and come right out. At that point, there is absolutely no resistance.
>
> So I think that the evidence shows beyond a reasonable doubt that, although he might not have originally started the fight -- he might not even have, originally, intended to kill her, at that moment, the moment the fight started, there is no doubt in my mind that he did intend to kill her when he stuck that knife into her chest, and, certainly, when he slashed her throat to keep her quiet. The only way he could do that was to kill her, and, also, the wounds in the back, to make sure she was dead.

Notes of testimony, 7/21/08 (Day Two) at 41-44.[1]

The trial court clearly based its finding of a specific intent to kill on the lethal nature of the chest and neck wounds. "It is well-settled that specific intent to kill can be established through circumstantial evidence such as the use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Johnson***, 107 A.3d 52, 66 (Pa. 2014). Of course, stabbing a person in the abdomen would supply specific intent under this formula; however, how much more certain is death than when the left chest, where the heart is located, or the throat, with its vital arteries and veins, is slashed deeply open? This patently indicates that appellant specifically intended to kill his wife. We also agree with the court that the stabbing of

---

[1] Both trial transcripts are dated July 21, 2008, although they are marked as occurring over two days.

the victim's back, where she now no longer moved in response, was done to insure that she was, in fact, dead.

Finally, a defendant asserting a claim of ineffective assistance of counsel must show that:  1) the underlying legal claim has arguable merit; 2) counsel had no reasonable basis for his or her action or omission; and 3) defendant suffered prejudice as a result.  ***Commonwealth v. Watkins***, 108 A.3d 692, 702 (Pa. 2014).  Since the trial court relied upon the utterly lethal nature of the chest and neck wounds to find a specific intent to kill, and not upon any implication by Dr. Hood's testimony that this was not a rage or heat of passion killing, we find that expert medical testimony countering Dr. Hood would not have changed the result at trial; hence, we find no prejudice and no ineffectiveness.

Accordingly, having found no merit to the issue on appeal, we will affirm the order entered below.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2015