**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3111
_____

ADAM ROSEN,
                                        Appellant

v.


SUPERINTENDENT MAHANOY SCI;
ATTORNEY GENERAL OF THE COMMONWEALTH OF
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-04539)
District Judge: Honorable Nitza I. Quiñones Alejandro
_____

Argued March 11, 2020

Before: McKEE, AMBRO, and PHIPPS *Circuit Judges*

(Opinion filed:  August 26, 2020)

Karl D. Schwartz     **[Argued]**
Jonathan D. Cioschi
Wiseman & Schwartz, LLP
718 Arch Street, Suite 702
Philadelphia, PA 19106
          *Counsel for Appellant*

Adrienne D. Jappe   **[Argued]**
Robert M. Falin
Montgomery County Office of District Attorney
P.O. Box 311
Norristown, PA 19404
        *Counsel for Appellees*

_____

OPINION OF THE COURT

_____

McKEE, *Circuit Judge*.

Adam Rosen asks us to reverse the District Court's denial of his petition for habeas corpus.[1] The Commonwealth of Pennsylvania requested a psychiatric exam of Rosen in preparation for his first murder trial, where he raised a diminished capacity defense. After his first conviction was overturned, he abandoned his diminished capacity defense. Rosen argues that the second trial court violated his Fifth Amendment right to remain silent when it ruled that his statements from the court-ordered psychiatric exam were admissible to impeach Rosen if he chose to testify at his second trial. After electing not to testify, Rosen was again convicted of murder. Because Rosen cannot demonstrate that using his statements to the Commonwealth's psychiatric expert at the second trial for the limited purpose of impeachment would violate clearly established Fifth Amendment law, we will affirm the District Court's dismissal.

## I.   FACTS AND PROCEDURAL HISTORY
### A.  Factual Background

On June 30, 2001, Adam Rosen stabbed his wife, Hollie Rosen, to death in their home.[2] Thereafter, Rosen called the police and claimed that masked intruders had invaded his home and stabbed his wife.[3] However, within several hours, he confessed to the stabbing but claimed it was an unintentional

_____

[1] 28 U.S.C. § 2254.
[2] *Rosen v. Kerestes*, Civil Action No. 15-4539, 2017 U.S. Dist. LEXIS 179378, at *2 (E.D. Pa. Oct. 25, 2017).
[3] *Id.*

response to his wife swinging a knife at him.[4] According to Rosen, he and his wife had been arguing in the kitchen that morning when she nicked him on the neck and stomach with a knife.[5] He claimed he followed her upstairs and then blacked out. The next thing he said he remembered was seeing his severely wounded wife on the bedroom floor. Hollie Rosen died of stab wounds to her back, neck, and chest.[6] Adam Rosen was arrested and charged with first degree murder.[7]

## B. Rosen's First and Second Murder Trials

At his first trial, Rosen presented a diminished capacity defense.[8] In support of his defense, Rosen retained and was evaluated by psychiatrist Dr. Paul Fink.[9] The trial court granted the Commonwealth's motion to have Rosen evaluated by its own expert, Dr. Timothy Michals, in order to rebut the diminished capacity defense.[10] The record does not show that he was Mirandized prior to this evaluation.[11] Dr. Fink testified

---

[4] *Id*. at *2-3, *6; Rosen Br. 2.

[5] This version of events is based on Rosen's statements to his psychiatric expert. A121-22.

[6] A122; *see also Rosen*, 2017 U.S. Dist. LEXIS 179378, at *2.

[7] A69.

[8] *Rosen*, 2017 U.S. Dist. LEXIS 179378, at *3.

[9] *Id*.

[10] *Id*.

[11] Rosen claims that Dr. Michals did not administer *Miranda* warnings before Rosen's interview, and that he did not waive his right to remain silent. The Commonwealth, on the contrary, argues that Dr. Michals administered *Miranda* warnings and sought a waiver from Rosen before examining him. The Commonwealth bears the burden of establishing waiver and offers little to show that Rosen was indeed given a comprehensive set of warnings and thereafter knowingly and voluntarily waived his right to remain silent. *See Commonwealth v. Rosen*, 42 A.3d 988, 1001 (Pa. 2012) (Saylor, J., dissenting) (explaining that the Commonwealth did not argue or brief warning-as-waiver issues below and therefore cannot rely on waiver as a basis for admitting Rosen's statements to Dr. Michals); *see also Gibbs v. Frank*, 387 F.3d 268, 274 (3d Cir. 2004) (explaining that a compelled psychiatric

3

at trial that Rosen was incapable of forming the intent to kill due to his manic-depressive mental illness, accompanied by psychotic features and paranoia, and the stress caused by the volatile deterioration of his marriage.[12] Dr. Michals, on the other hand, testified that Rosen did not have a mental disorder that impaired his ability to form the specific intent to kill.[13] Dr. Michals also testified that discrepancies between the statements Rosen made to the two psychiatric experts and Rosen's changing version of events—including his initial false statement about the home invaders—demonstrated that Rosen was self-serving.[14] Rosen did not testify in his own defense and the jury convicted him of first-degree murder.[15]

After Rosen was granted a new trial for reasons unrelated to this appeal, he abandoned his diminished capacity defense and notified the Commonwealth that he did not intend to call a mental health expert.[16] This time, Rosen planned to testify in his defense and argue that he did not premeditate or have the deliberate, willful intent to kill his wife.[17] Nevertheless, the Commonwealth filed a motion *in limine* seeking to admit Rosen's statements to Dr. Michals about killing his wife and those in which Rosen admitted he previously attempted to rape her.[18] The trial court ruled that Rosen's statements could *not* be used as substantive evidence in the Commonwealth's case-in-chief, but that the Commonwealth could use the statements to impeach Rosen if

---

interview implicates the Fifth Amendment and therefore the defendant-subject is entitled to *Miranda* warnings). Assuming *arguendo* that Rosen was not given *Miranda* warnings and did not waive his right to remain silent, Rosen still fails to establish that he is entitled to relief.

[12] *Rosen*, 42 A.3d at 990; A199-120.

[13] *Rosen*, 42 A.3d at 990.

[14] A150-51; *see also* Rosen Br. 4.

[15] A70; *Rosen*, 2017 U.S. Dist. LEXIS 179378, at *3.

[16] *Rosen*, 2017 U.S. Dist. LEXIS 179378, at *4.

[17] A191; Rosen Br. 7.

[18] A75. Rosen also submitted a motion *in limine* seeking to exclude the testimony, and the trial court held oral argument on the cross-motions. *Rosen*, 42 A.3d at 991.

4

he testified.[19] After the trial court's ruling, Rosen changed his mind and chose not to testify at the ensuing bench trial.[20] At that trial, Rosen was convicted of first-degree murder and sentenced to life in prison without the possibility of parole.

### C. Pennsylvania Supreme Court Ruling

After the Pennsylvania Superior Court affirmed the conviction, the Pennsylvania Supreme Court granted allocatur review on the question of "[w]hether the limited Fifth Amendment waiver occasioned by a mental health defense in a defendant's first trial allows the Commonwealth to use the evidence obtained pursuant to such waiver as rebuttal in a subsequent trial where no mental health defense is presented."[21] Based upon several Pennsylvania state cases and Supreme Court law on the Fifth Amendment, the court affirmed the trial court's ruling on the motion *in limine*.

In *Commonwealth v. Morley*, 681 A.2d 1254 (Pa. 1996), the court held that a defendant who raises a mental health defense in Pennsylvania waives the privilege against self-incrimination under the Fifth Amendment and can be compelled to submit to an examination by the Commonwealth's psychiatric expert. Likewise, in *Commonwealth v. Sartin*, 751 A.2d 1140 (Pa. 2000), the court held that a defendant who intends to use the results of his or her own psychiatric exam can be compelled to submit to examination by an expert of the Commonwealth's choosing for the purpose of rebutting the defense.[22] Reading *Morley* and *Sartin* together with *Commonwealth v. Santiago*[23] and

---

[19] This oral ruling was not transcribed. Fortunately, the parties agree on the trial court's ruling. *Rosen*, 2017 U.S. Dist. LEXIS 179378, at *14.

[20] *Rosen*, 42 A.3d at 991.

[21] *Id*. at 993.

[22] *Sartin* also made clear that the Fifth Amendment waiver only allowed the Commonwealth to use the results of its exam to rebut those issues implicated by the defense's own expert. *Sartin*, 751 A.2d at 1143.

[23] *Commonwealth v. Santiago*, 662 A.2d 610 (Pa. 1995) (holding that a defendant who presents his own expert

*Commonwealth v. Boyle*,[24] the Pennsylvania Supreme Court distilled the following rule: "[w]hen the defendant voluntarily presents a mental health defense that he subsequently abandons, the Commonwealth may, upon retrial, utilize the results of its psychological examination as to those issues that have been implicated by the defendant's own expert."[25] The court explained that because the Commonwealth could introduce Dr. Fink's testimony as substantive evidence, Dr. Michals' testimony "clearly could have been utilized in response to those issues implicated by Dr. Fink's testimony."[26]

Finally, the court found that any error would have been harmless because, if Rosen had testified, "all of the impeachment evidence could have been elicited solely from Dr. Fink, who was in possession of the same mental health records and reports that Dr. Michals possessed."[27] Rosen "made admissions of guilt to both" experts and could have been impeached by the admissible statements he made to Dr. Fink.[28] Therefore, "there is no reasonable possibility that the error may have contributed to the verdict."[29]

## D. District Court's Ruling on Habeas Review

Rosen filed a habeas petition pursuant to 28 U.S.C. § 2254, arguing that the trial court's ruling that his statements to the Commonwealth's psychiatric expert could be used to impeach him violated his Fifth Amendment right to remain

---

psychiatric testimony at a first trial waives psychiatrist-patient privilege with regard to his expert's testimony at a second trial where he no longer raises an insanity defense).

[24] *Commonwealth v. Boyle*, 447 A.2d 250 (Pa. 1982) (admitting defendant's testimony from his first trial at a subsequent trial where the defendant did not testify does not violate the Fifth Amendment right to remain silent because the constitutional privilege is waived).

[25] *Rosen*, 42 A.3d at 997.

[26] *Id*.

[27] *Id*.

[28] *Id*.

[29] *Id*. at 998.

silent.[30] The District Court denied the petition, explaining that Rosen failed to show that the Pennsylvania Supreme Court's conclusion that there was no Fifth Amendment violation ran afoul of clearly established federal law.[31] The court explained that Rosen "relies on snippets from several Supreme Court cases and a Third Circuit case, in an attempt to extrapolate 'clearly established Federal law' from general principles and materially distinguishable holdings of the Supreme Court."[32] Thus, the District Court concluded that Rosen had failed to overcome the deference owed to state court decisions under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[33]

## II. JURISDICTION AND STANDARD OF REVIEW
### A. Jurisdiction

Rosen brought this habeas corpus action under 28 U.S.C. § 2254. The District Court had jurisdiction under 28 U.S.C. §§ 2241(a) and 2254(a). The order of the District Court dismissing the petition is an appealable final order. The District Court denied a certificate of appealability, but we later granted one on Rosen's claimed Fifth Amendment violation.[34] Jurisdiction for this appeal arises under 28 U.S.C. § 1291 and 28 U.S.C. § 2253(c)(1).

### B. Standard of Review under AEDPA

We exercise plenary review over the District Court's denial of Rosen's habeas petition.[35] The Pennsylvania Supreme Court decided the Fifth Amendment issue on the merits. Therefore, pursuant to 28 U.S.C. § 2254(d), AEDPA requires Rosen to show that the state court ruling:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[30] *Rosen v. Kerestes*, Civil Action No. 15-4539, 2018 WL 4030740 (E.D. Pa. Aug. 22, 2018).
[31] *Id.* at *1 n.1.
[32] *Id.*
[33] *Id.*
[34] A3.
[35] *Ross v. Dist. Atty. Allegheny Cnty.*, 672 F.3d 198, 205 (3d Cir. 2012).

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[36]

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court elaborated on § 2254(d)(1), explaining:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[37]

We have further explained that a state court decision is "contrary to" clearly established law where "the Supreme Court has established a rule that determines the outcome of the petition."[38] "[I]t is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome."[39]

A state court's decision is an "unreasonable application" of clearly established law where "evaluated objectively and on the merits, [it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. In making this determination, mere disagreement with the state court's conclusions is not enough to warrant

---

[36] 28 U.S.C. § 2254(d).

[37] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

[38] *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (en banc), *cert. denied* 528 U.S. 824 (1999).

[39] *Id*. (emphasis in the original).

8

habeas relief."[40] Importantly, this entails a "substantially higher threshold" than a federal court's independent judgment that the state court's application of Supreme Court precedent was incorrect.[41] Instead, the state court's application of federal law must be objectively unreasonable, not merely incorrect.[42]

Section 2254(d)(2), in turn, sharply restricts the circumstances in which a federal habeas court may grant relief based on a state court's factual determinations. The petitioner must show that the state court verdict was based on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached the same conclusion.[43]

## III. DISCUSSION

### A. Rosen failed to demonstrate that using his statements to the Commonwealth's psychiatric expert to impeach him at his second trial would be contrary to or an unreasonable application of clearly established Fifth Amendment law.

We have previously described our approach to § 2254(d)(1) as a two-step analysis whereby "federal habeas courts first . . . identify whether the Supreme Court has articulated a rule specific enough to trigger 'contrary to' review; and second, only if it has not, . . . evaluate whether the state court unreasonably applied the relevant body of precedent."[44] The plain language of § 2254(d)(1) applies to "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law"—applying the latter to both the "contrary to" and "unreasonable application" prongs of § 2254(d)(1).[45] As we acknowledged in *Matteo*, there

---

[40] *Id*. at 890.

[41] *Renico v. Lett,* 559 U.S. 766, 773 (2010) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

[42]  *Williams*, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (emphasis in the original).

[43] *Campbell v. Vaughn,* 209 F.3d 280, 291 (3d Cir. 2000).

[44] *Matteo*, 171 F.3d at 888.

[45] *See Williams*, 529 U.S. at 412 ("Under § 2254(d)(1), the writ may issue only if one of the following two conditions

is likely some overlap amongst the parts of § 2254(d)(1), "but we must attempt to read the statute so that each has some operative effect . . . ."[46]

Accordingly, identifying an applicable principle of clearly established Supreme Court law can be treated as a prerequisite—or Step 0.5—to applying the two-step test from *Matteo*. This approach is consistent with our decision in *Fischetti v. Johnson*, where we explained that § 2254(d)(1) "requires us to determine what the clearly established Supreme Court decisional law was at the time petitioner's conviction became final[,]" and then "analyze the challenged state decision in light of that decisional law under each of the two prongs of the AEDPA test."[47]

"Clearly established" Supreme Court law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[48] Furthermore, in determining what is "clearly established," Supreme Court decisions cannot be viewed "at a broad level of generality," but instead must be viewed on a "case-specific level."[49] The "clearly established Federal law" provision requires Supreme Court decisions to be viewed through a "sharply focused lens."[50]

---

is satisfied—the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'"). While *Matteo* was decided before *Williams*, we have since affirmed that the analytical framework from *Matteo* remains applicable. *See Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000).

[46] *Matteo*, 171 F.3d at 888; *see also Lindh v. Murphy*, 521 U.S. 320, 336 (1997) ("[I]n a world of silk purses and pigs' ears, [AEDPA] is not a silk purse of the art of statutory drafting.").

[47] *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004).

[48] *Williams*, 529 U.S. at 412.

[49] *Fischetti*, 384 F.3d at 148.

[50] *Id.* at 149.

*1. Clearly Established Supreme Court Law on the Fifth Amendment*

Rosen claims that it is clearly established federal law that impeaching a defendant using evidence from the government's mental health expert after a mental health defense is abandoned violates the Fifth Amendment. Rosen draws this proposed principle primarily from three Supreme Court cases: *Estelle v. Smith*, 451 U.S. 454 (1981); *Buchanan v. Kentucky*, 483 U.S. 402 (1987); and *Kansas v. Cheever*, 571 U.S. 87 (2013). Rosen further relies on our decision in *Gibbs v. Frank*, 387 F.3d 268 (3d Cir. 2004), although he concedes that *Gibbs* is not clearly established Supreme Court law.[51]

Rosen primarily relies upon *Estelle v. Smith*. There, the Supreme Court held that a "criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding."[52] The trial judge had *sua sponte* ordered an evaluation to determine the defendant's competency to stand trial.[53] The prosecution later used statements from that exam in a capital sentencing proceeding as evidence of the defendant's future dangerousness.[54] The defendant was sentenced to death.[55] On appeal, the Supreme Court reversed the sentence. It held that the Fifth Amendment precluded the use of the defendant's compelled statements

---

[51] The state court judgment must not merely be contrary to law as articulated by any federal court; rather "[i]t must contradict 'clearly established' decisions of the United States Supreme Court alone." *Fischetti*, 384 F.3d at 147. However, "[i]n determining whether a state decision is an unreasonable application of Supreme Court precedent, this court has taken the view that decisions of federal courts below the level of the . . . Supreme Court may be helpful . . . in ascertaining the reasonableness of state courts' application of clearly established . . . Supreme Court precedent." *Id.* at 149 (internal quotation marks and citation omitted).

[52] *Estelle*, 451 U.S. at 468.

[53] *Id.* at 456-57.

[54] *Id.* at 459-60.

[55] *Id.* at 460.

11

against him at the penalty phase where he introduced no psychiatric evidence in his defense.[56] The Court emphasized the compelled nature of the defendant's statements, which were given in custody, pursuant to a court order, without counsel present, and in the absence of *Miranda* warnings.[57] Because the defendant was compelled to submit to the evaluation and had not attempted to introduce any psychiatric evidence of his own, the statements were inadmissible unless the psychiatrist apprised the defendant of his rights and obtained a valid waiver before questioning him.[58]

Rosen also relies on *Buchanan v. Kentucky,* 483 U.S. 402 (1987). In *Buchanan*, the defendant raised an extreme emotional disturbance defense at his murder trial and called his former social worker to testify in his defense.[59] The prosecutor cross-examined the social worker using the report from a court-ordered exam that defense counsel and the prosecutor had jointly requested for the purpose of seeking mental health treatment for the defendant.[60] The Supreme Court found no Fifth Amendment violation, explaining that "if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested."[61] The Court distinguished *Estelle* because defense counsel here had jointly requested the exam and the defendant had placed his own mental health at issue.[62] The Court concluded that "[t]he introduction of such a report for this limited rebuttal purpose does not constitute a Fifth Amendment violation."[63]

---

[56] *Id*. at 468.

[57] *Id.* at 468-69.

[58] *Id.* As we have noted, we will assume *arguendo* that Rosen likewise was not apprised of his rights and did not waive his right to remain silent before his psychiatric exam.

[59] *Buchanan*, 483 U.S. at 408-09.

[60] *Id*. at 409-11.

[61] *Id*. at 422-23.

[62] *Id*. at 423.

[63] *Id*. at 423-24.

The Supreme Court in *Kansas v. Cheever*, 571 U.S. 87 (2013), applying *Buchanan*, found that the Fifth Amendment allowed the prosecution to introduce statements from a *compelled* mental health evaluation to rebut a mental health defense.[64] At his murder trial, the defendant in *Cheever* offered a psychiatric expert to support his defense that voluntary intoxication had rendered him incapable of premeditation.[65] The state offered rebuttal testimony from the defendant's court-ordered psychiatric examination.[66] The Supreme Court held: "where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit a crime, the prosecution may offer evidence from a court-ordered psychological examination for the limited purpose of rebutting the defendant's evidence."[67] The Court explained that once a defendant presents expert psychological evidence, the government cannot be denied "the only effective means of challenging that evidence: testimony from an expert who has also examined him."[68] The Court emphasized that the compelled testimony was used "only after" the defendant placed his mental health at issue and for the purpose of rebutting the mental health defense.[69]

Although our decision in *Gibbs* is not Supreme Court law, it is the most factually analogous case to Rosen's and assists our inquiry into what is "clearly established" Fifth Amendment law in this court.[70] There, Gibbs raised a mental

---

[64] *Cheever*, 571 U.S. at 93-95.

[65] *Id*. at 91.

[66] *Id.* at 91-92.

[67] *Id*. at 98.

[68] *Id*. at 94.

[69] *Id*. at 95.

[70] *Fischetti*, 384 F.3d at 149 ("In determining whether a state decision is an unreasonable application of Supreme Court precedent . . . decisions of federal courts below the level of the . . . Supreme Court may be helpful . . . in ascertaining the reasonableness of state courts' application of clearly established . . . Supreme Court precedent.") (internal quotation marks and citation omitted). And while the Pennsylvania Supreme Court is not bound by *Gibbs*, it is a binding precedent in the District Court with respect to

infirmity defense at his first murder trial.[71] The Commonwealth's expert, Dr. Sadoff, testified at the first trial to rebut Gibbs' expert testimony on diminished capacity.[72] That testimony introduced several inculpatory statements Gibbs made during the court-ordered exam.[73] After his conviction was overturned on other grounds, Gibbs decided not to raise a mental health defense at his second trial. Instead, he contested the identity of the shooter.[74] Nevertheless, the trial court allowed Sadoff to testify during the Commonwealth's case-in-chief.[75] That testimony included Gibbs' inculpatory statements to Sadoff during his psychiatric interview.[76] On habeas review, we found that the trial court's decision, as affirmed by the Pennsylvania Superior Court, was an unreasonable application of clearly established Supreme Court law and granted Gibbs' habeas petition.[77] Importantly, we granted the petition based on the limited scope of the *Miranda* warnings given to Gibbs, which misstated the consequences of his Fifth Amendment waiver—an issue not relevant to Rosen's appeal.[78] However, we also stated that if Gibbs had not been Mirandized at all—as Rosen claims he was not—"the state ruling admitting the Gibbs interview in the second trial [would be] contrary to [*Estelle v.*] *Smith* itself."[79] In justifying this conclusion, we explained that "Sadoff was permitted to testify in the prosecution case in chief… simply to repeat incriminating statements that Gibbs had made."[80] This was problematic because those statements were offered "simply for the truth of the admissions of fact" and "not even to prove a psychological point, since the second trial presented no psychological issue before Sadoff testified."[81]

---

what constitutes an unreasonable application of Fifth Amendment law on habeas review.

[71] *Gibbs*, 387 F.3d at 271.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.* at 277.

[78] *Id.* at 276.

[79] *Id.* at 275.

[80] *Id.*

[81] *Id.*

## 2. Application of Clearly Established Law to Rosen

Having reviewed the relevant Supreme Court law through "a sharply focused lens[,]" we cannot conclude that there is a directly applicable Supreme Court precedent that would preclude the Commonwealth from using Rosen's statements against him at his second trial for the limited purpose of impeachment.[82] Rosen attempts to extrapolate a principle of Fifth Amendment law from the similar yet materially distinguishable cases we have just discussed.[83] However, AEDPA's deferential standard of review demands more than this jigsaw approach. We therefore cannot find that the Pennsylvania Supreme Court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . ."[84]

The rule from *Estelle*—that a "criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding"—is far too narrow to help Rosen here.[85] Rosen both initiated an evaluation and introduced psychiatric evidence at his first criminal trial. It is undisputed that the Commonwealth could compel Rosen to be examined by its own expert for the purposes of preparing a rebuttal in the first trial.[86] The *Estelle* Court expressly

---

[82] *Fischetti*, 384 F.3d at 149.

[83] We reiterate that cases Rosen relies upon are *materially* distinguishable, such that we can identify discrete issues the Supreme Court has not yet addressed. It would not be enough to point to irrelevant or meaningless differences. *See Matteo*, 171 F.3d at 888 (emphasizing that the petitioner is not required "to cite factually identical Supreme Court precedent"). The bar for relief under AEDPA is high but must not be insurmountable lest we effectively close the door to all relief on habeas. AEDPA requires that we defer, not that we abdicate.

[84] 28 U.S.C. § 2254(d)(1).

[85] *Estelle*, 451 U.S. at 468.

[86] A529 ("Federal courts have consistently reiterated . . . that when a defendant places his mental status at issue, his

acknowledged that "a different situation arises where a defendant intends to introduce psychiatric evidence" and expressed concern about the government's ability to rebut such evidence.[87] Viewed through a "sharply focused lens," *Estelle* speaks only to the Fifth Amendment rights of someone who never raises a mental health defense and not to the scope of the Fifth Amendment waiver for someone, like Rosen, who raises and presents an unsuccessful mental health defense that he later abandons.[88] The Pennsylvania Supreme Court could thus rely on *Commonwealth v. Boyle* to find that the Fifth Amendment waiver triggered by Rosen's mental health defense at his first trial extended to his second trial, at least with respect to the issues raised by his own expert.[89]

*Buchanan* is even less helpful to Rosen. There, the defense had joined in the request for the psychiatric evaluation and therefore the defendant's statements did not result from an involuntary examination. Rosen stresses the phrase "limited

---

Fifth Amendment privilege against self-incrimination is not violated by a court-ordered psychiatric examination."); *see also Rosen*, 42 A.3d at 996-97 (discussing *Morley* and *Sartin*).

[87] *Estelle*, 451 U.S. at 472; *see also id*. at 465 ("When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case.").

[88] *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (noting that the Supreme Court has "never extended *Estelle*'s Fifth Amendment holding beyond its particular facts").

[89] 447 A.2d 250 (Pa. 1982). In *Boyle*, the Pennsylvania Supreme Court held that a defendant who testifies at his first trial waives his Fifth Amendment privilege and cannot reclaim it at a later trial on the same indictment, even where he declines to testify. *Id*. at 256. Without endorsing this decision or its application to Rosen, we merely note that the Pennsylvania Supreme Court could reasonably, even if incorrectly, determine that Rosen waived his Fifth Amendment privilege at his first trial by introducing expert psychiatric testimony regarding his mental health, and that this waiver transferred to his second trial despite the abandonment of his mental health defense.

rebuttal purpose" to conclude that "[t]he *Buchanan* [c]ourt could avoid the Fifth Amendment problem only because of this limitation on the use of such evidence."[90] Rosen therefore proposes that *Buchanan* "clearly establishes" that psychiatric evidence is *only* admissible to rebut the defendant's mental health defense. This inference is not supported by either the text or reasoning of *Buchanan.* The Court explicitly stated that the psychiatric evidence there was admissible "at the very least" to rebut a mental health defense. The Court's focus was on the voluntary nature of the examination jointly requested by the defense.[91] *Buchanan* leaves open the scope of a Fifth Amendment waiver triggered by a defendant's mental health defense. For example, *Buchanan* does not address what would happen if the defense was raised and later abandoned, or whether the waiver applies to involuntary examinations compelled by the government.

The most compelling Supreme Court support for Rosen's proposed principle of Fifth Amendment law comes from *Cheever*. The reasoning in *Cheever* focuses on the defendant placing his mental health at issue through his own evidence, and the right of the prosecution to rebut such evidence. The Supreme Court referred several times to the evidence being admissible for the "limited purpose of rebutting" the defense's mental health defense. Citing to *Buchanan*, the Court explained that it previously "held that testimony based on a court-ordered psychiatric evaluation is admissible only for a 'limited rebuttal purpose.'"[92]

According to Rosen, *Cheever* established that compelled testimony from the government's psychiatric expert is only admissible to the extent it directly rebuts psychiatric

---

[90] Rosen Br. 27.

[91] *Buchanan*, 483 U.S. at 422; *see also id*. at 424 ("Here, in contrast [to *Estelle*], petitioner's counsel himself requested the psychiatric evaluation . . . .").

[92] *Cheever*, 571 U.S. at 97; *see also id.* at 93-94 ("The rule of *Buchanan*, which we reaffirm today, is that where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit an offense, the prosecution may present psychiatric evidence in rebuttal.").

evidence presented by the defendant. Yet, even this narrow reading of *Cheever* does not touch on several vital aspects of Rosen's case. Therefore, we cannot conclude that it clearly established an applicable precedent. *Cheever*, for example, does not address whether impeaching the defendant with statements from the compelled exam, if he chose to testify, would constitute a proper "rebuttal purpose." In fact, *Cheever* alluded to limitations on the Fifth Amendment protections for testifying defendants.[93] The Court further explained that precluding the use of compelled psychiatric testimony "would undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime."[94] These concerns about the integrity of the judicial process and fairness to the government undermine Rosen's claim that he should have been allowed to testify at his second trial without impeachment by his own prior inconsistent statements. Nor does *Cheever* touch on whether the proper admission of testimony for a "limited rebuttal purpose" at one trial constitutes a Fifth Amendment waiver in future proceedings where the mental health defense is abandoned.[95]

Given the limitations of AEDPA, the absence of Supreme Court precedent addressing the use of compelled statements given to the government's mental health expert as impeachment evidence is fatal to Rosen's claim here. As we have noted, the second trial court ruled that Rosen's compelled statements were inadmissible as substantive evidence and admissible only for the limited purpose of impeachment in the event Rosen testified. *Estelle*, *Buchanan*, and *Cheever* address situations where the government sought to admit the

---

[93] *Id*. at 94 ("The admission of this rebuttal testimony harmonizes with the principle that when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination.").

[94] *Id*.

[95] *See Boyle,* 447 A.2d at 256 (acknowledging that a defendant who testifies in one trial and thus waives his Fifth Amendment privilege cannot object to the admission of testimony at a later trial even where he does not testify).

defendant's statements to prove or disprove a contested issue—such as the defendant's future dangerousness, intent, or mental state. However, there was no indication in any of these cases that the defendant intended to testify and was precluded from doing so by the prospect of impeachment by compelled statements.[96] Therefore they do not address the admissibility of a defendant's statements for the purpose of impeaching the defendant.

Even *Gibbs*, with its otherwise striking factual similarity to Rosen's circumstances, is distinguishable on this point. The testimony of the Commonwealth's expert in *Gibbs* was introduced "in the prosecution [case-in-chief]. . . simply to repeat incriminating statements" made by the defendant and offered "simply for the truth" of the matters asserted.[97] In contrast, Rosen's second trial court specifically found that Dr. Michals' testimony was *inadmissible* in the case-in-chief and would be allowed solely for the purpose of impeachment if Rosen chose to testify. Impeachment evidence is not offered to prove the truth of the matter asserted, but rather is offered to

---

[96] Because we deny Rosen's petition on other grounds, we do not reach the issue of whether the state court's ruling on the motion *in limine* effectively denied Rosen his right to testify, or whether he forfeited his right to appeal the Fifth Amendment issue by electing not to testify. *Compare Luce v. United States*, 469 U.S. 38, 41-43 (1984) (holding that a defendant failed to preserve an issue for appeal where the trial court ruled that he could be impeached with a prior conviction under Fed. R. Evid. 609(a) and he thereafter declined to testify), *with New Jersey v. Portash*, 440 U.S. 450, 454 (rejecting state's claim that defendant's Fifth Amendment challenge to the trial court's ruling that his immunized testimony could be used as impeachment evidence is too "abstract and hypothetical" to review because defendant did not take the stand); *and Brooks v. Tennessee*, 406 U.S. 605, 612 (1972) (reviewing a state statute requiring a testifying defendant to testify first at his trial, despite the petitioner choosing not to testify because of the statute, and finding it violates the Fifth Amendment).

[97] *Gibbs*, 387 F.3d at 275.

impugn the credibility of the person testifying.[98] Moreover, the jury can be specifically instructed that impeachment evidence may be considered only for that limited purpose and cannot be considered as substantive evidence of the defendant's mental state or intent.[99]

The trial court's ruling that Rosen's statements could be used only for impeachment is a material distinction on habeas review under AEDPA. There is reason to believe that the Supreme Court might treat impeachment by compelled statements differently than the admission of such testimony as substantive evidence in Rosen's situation. In *Harris v. New York*, the Supreme Court held that statements obtained in violation of the Fifth Amendment under *Miranda* are still admissible for the purposes of impeachment, even though such statements are inadmissible as substantive evidence.[100] The Supreme Court explained that the right of the defendant to testify "cannot be construed to include the right to commit perjury[,]" and therefore "[h]aving voluntarily taken the stand, [the defendant] was under an obligation to speak truthfully and accurately, and the prosecution . . . did no more than utilize the traditional truth-testing device[]" of impeachment by the defendant's own inconsistent statements.[101] On the other hand,

---

[98] *Impeachment evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Evidence used to undermine a witness's credibility.").
[99] Because Rosen elected a bench trial and chose not to testify, such an instruction was not necessary here. However, the possibility of giving such an instruction in a similar case is relevant to distinguishing between the use of evidence for substantive versus impeachment purposes. In addition, a judge at a bench trial would understand that she could not consider impeachment evidence for any purpose other than assessing a witness's credibility.
[100] *Harris v. New York*, 401 U.S. 222, 226 (1971) ("The shield provided by [*Miranda*] cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.").
[101] *Id*. at 225; *see also United States v. Havens*, 446 U.S. 620, 626 (1980) (explaining that "the deterrent function of the rules excluding unconstitutionally obtained evidence is sufficiently served by denying its use to the government on

coerced statements—such as where "the [speaker] is told to talk or face the government's coercive sanctions[]"—are deemed involuntary and therefore inadmissible for any purpose, including impeachment.[102]

A court-ordered psychological or psychiatric exam, like a custodial police interrogation, is an inherently coercive situation. To the extent the District Court concluded that Rosen's "statements to Dr. Michals cannot be deemed involuntary, coerced, or compelled since he voluntarily raised the mental health defense[,]" we cannot agree.[103] Rosen's statements, given while in custody, under court order, without the benefit of *Miranda* warnings, are compelled testimony under the Fifth Amendment.[104] Nevertheless, whether

its direct case" and therefore allowing the government to impeach a testifying defendant using evidence inadmissible in the case-in-chief).

[102] *Portash*, 440 U.S. at 459 (holding that testimony given in response to a grant of legislative immunity is "coerced testimony" because the person must testify or potentially face contempt charges, and under such circumstances "there is no question whether physical or psychological pressures overrode the defendant's will"); *see also Kansas v. Ventris,* 556 U.S. 586, 590 (2009) ("The Fifth Amendment guarantees that no person shall be compelled to give evidence against himself, and so is violated whenever a truly coerced confession is introduced at trial, whether by way of impeachment or otherwise."); *Mincey v. Arizona*, 437 U.S. 385, 398-402 (1978) (holding that a statement taken from a defendant while he was hospitalized and in intensive care, slipping in and out of consciousness, and in "unbearable" pain was inadmissible, even for impeachment, because the statement was not "the product of his free and rational choice").

[103] *Rosen*, 2018 WL 4030740, at *1 n.1.

[104] *Estelle*, 451 U.S. at 467, 469 ("The considerations calling for the accused to be warned prior to custodial interrogation apply with no less force to the pretrial psychiatric examination" because an examination "while in custody with a court-ordered psychiatric" expert is "not given freely and voluntarily without any compelling influences.") (internal quotation marks and citation

21

testimony given to a psychiatrist under court order is "truly coerced" and therefore involuntary, or merely compelled in the same sense as a statement given to police in violation of *Miranda* (and therefore still admissible for impeachment), is yet to be determined by the Supreme Court.[105]

Nor do we decide today whether Rosen's statements were voluntary or involuntary under the Fifth Amendment. Rather, we merely conclude that the Pennsylvania Supreme Court's decision approving of the trial court's admissibility ruling is not contrary to or an unreasonable application of an ambiguous area of Fifth Amendment law.[106] This is not to say that Rosen's interpretation of the Fifth Amendment is not plausible, or even compelling.[107] However, such a rule is not

---

omitted); *see also Gibbs*, 387 F.3d at 274 (affirming that *Miranda* warnings apply to court-compelled psychiatric interviews). And unlike in the *Miranda* context, the only way Rosen could remain silent was to forfeit his mental health defense at trial. *See Morley*, 681 A.2d at 1258, 1258 n.5 (holding that a defendant who raises a mental infirmity defense "may not refuse to allow the Commonwealth psychiatrist to examine him or her on the basis that it violates the defendant's privilege against self-incrimination" and "may be compelled to submit to a psychiatric exam").

[105] *Compare Ventris*, 556 U.S. at 590 ("The Fifth Amendment . . . is violated whenever a truly coerced confession is introduced at trial, whether by way of impeachment or otherwise."), *and Portash*, 440 U.S. at 458 (distinguishing *Harris* because there the defendant made no claim that his statements obtained in violation of *Miranda* were coerced or involuntary), *with Harris*, 401 U.S. at 224 (admitting statement obtained in violation of *Miranda* for the purpose of impeachment where "[p]etitioner makes no claim that the statements made to the police were coerced or involuntary").

[106] *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (denying habeas petition where "precedent from [the Supreme] Court is, at best, ambiguous").

[107] Rosen Br. 31-32 (arguing that testimony a defendant is compelled to give to the government's expert is admissible only for the limited purpose of rebutting a psychological

yet "clearly established." Rosen's credible argument about where the Supreme Court *should* draw the line between cases such as *Harris* and *Portash* does not satisfy the deferential standard under AEDPA.[108] It is not enough that Rosen's argument is persuasive; it must be required by law and the state court's contrary decision must not just be incorrect, but unreasonable.[109]

### B. Because there is no clear Fifth Amendment violation, Rosen failed to demonstrate that he is entitled to relief under § 2254(d)(2).

Rosen also argues that he is entitled to relief under 28 U.S.C. § 2254(d)(2) because the Pennsylvania Supreme Court's harmlessness analysis was based on "an unreasonable determination of the facts in light of the evidence presented."[110]

---

defense and therefore inadmissible once that defense is abandoned, even for garden variety impeachment); *see also Gibbs*, 387 F.3d at 274 (explaining that the Fifth Amendment waiver triggered by a mental health defense "is not limitless; it only allows the prosecution to use the interview to provide rebuttal to the psychiatric defense").

[108] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (holding that a state court's decision is not contrary to or an unreasonable application of federal law where there is no Supreme Court holding that would require a different outcome).

[109] *Matteo*, 171 F.3d at 888 ("[I]t is not sufficient . . . to show merely that [petitioner's] interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome. This standard precludes granting habeas relief solely on the basis of simple disagreement with a reasonable state court interpretation of the applicable precedent."); *see also Williams*, 529 U.S. at 411 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

[110] This claim was not raised in the District Court and we could therefore deem the argument waived. *See Nelson v.*

Rosen argues that the court improperly conflated the testimony given to Dr. Fink with that given to Dr. Michals in concluding that "the same admissions could have been established by either expert's testimony[.]"[111] Based on that conclusion, the Pennsylvania Supreme Court held that since Dr. Fink's testimony was indisputably admissible, "there is no reasonable possibility that the error may have contributed to the verdict."[112] However, Rosen is correct that there are significant discrepancies between the statements that he gave to the two experts. In fact, Dr. Michals testified to these discrepancies during Rosen's first trial in order to suggest that Rosen was self-serving and challenge Rosen's inconsistent version of events.[113] It is therefore unlikely that, if Rosen had testified, "all of the impeachment evidence could have been elicited solely from Dr. Fink, who was in possession of the same mental health records and reports that Dr. Michals possessed."[114]

Nevertheless, Rosen's challenge to the harmlessness analysis is predicated on a finding that there was indeed a Fifth Amendment violation. Consequently, rebutting the state court's harmlessness analysis is a necessary but not sufficient basis for relief. As we discussed above, we cannot conclude that the Pennsylvania Supreme Court's decision violated Rosen's clearly established Fifth Amendment rights. We therefore need not delve into whether any such hypothetical error was prejudicial to Rosen at trial.

## IV.    CONCLUSION

*Adams USA, Inc.,* 529 U.S. 460, 469 (2000) (noting that "[i]t is indeed the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts"); *Singleton v. Wulff,* 428 U.S. 106, 120 (1976) (noting that "[i]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below"). However, we can within our discretion choose to take up the issue on appeal and will do so briefly to dismiss the claim on the merits. *Id.* at 121.

[111] *Rosen*, 42 A.3d at 998.

[112] *Id.*

[113] A149-50; Rosen Br. 35-40.

[114] *Rosen*, 42 A.3d at 997.

For the foregoing reasons, we will affirm the District Court's denial of the petition for habeas corpus.